**UNITED STATES of America, Appellee**

v.

**Opio MOORE, Appellant.**

Nos. 93–3158, 96-3046.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 8, 1996.

Decided Jan. 7, 1997.

Thomas W. Ullrich, appointed by the court, argued the cause and filed the brief for appellant.

Roy W. McLeese, III, Assistant U.S. Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney, John R. Fisher and Steven E. Rindner, Assistant U.S. Attorneys, were on the brief.

Before: SILBERMAN, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Separate concurring opinion filed by Circuit Judge SILBERMAN.

Separate concurring opinion filed by Circuit Judge TATEL.

SENTELLE, Circuit Judge:

Opio Moore appeals from convictions for (1) unlawful possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c); (3) unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); (4) possession of an unregistered firearm in violation of D.C.Code Ann. § 6–2311(a); and (5) possession of unregistered ammunition in violation of D.C.Code Ann. § 6–2361(3). He argues and the government concedes that the Supreme Court's intervening opinion in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), requires that the convic-

tion under 18 U.S.C. § 924(c) be vacated. We agree. Moore further argues that the district court erred in failing to sever the felon-in-possession charge from the other charges and in failing to sever his trial from that of his co-defendant; that the court abused its discretion in permitting certain expert testimony; that improper statements by the prosecutor denied him a fair trial; that the evidence was insufficient to sustain his convictions; and that the district court erred in denying, without a hearing, his motion pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel. Because none of these arguments establishes prejudicial error, we affirm the remaining convictions.

## I. BACKGROUND

On December 30, 1992, at approximately 1:20 a.m., Officer Christopher Sanders of the Metropolitan Police Department ("MPD") observed a Buick containing three individuals moving eastbound on H Street, N.W., at a high rate of speed. The car passed through several red lights without stopping. Officer Sanders pursued the car and signaled for it to stop. When the car came to a stop, Sanders, who was alone on patrol, approached the car and ordered the driver, Opio Moore, to exit the vehicle. Moore exited the car and raised his hands in the air. Sanders noticed a dark object under Moore's armpit. Suspecting that this object was a gun, the officer conducted a protective frisk for weapons. The frisk revealed that Moore was wearing an empty shoulder holster and a bullet-proof vest. At this time Officer Sanders noticed several bullet holes in the front of the car. Additional police officers soon arrived on the scene. The officers removed Daniel Armstead, a rear-seat passenger, from the car and frisked him. He too was wearing a bullet-proof vest. A frisk of the third occupant of the car disclosed nothing.

Moore produced a driver's license and registration. The registration revealed that Moore was the owner of the car. After Moore agreed to a search of the car, officers discovered a loaded 9–millimeter semiautomatic pistol, a loaded .45–caliber semiautomatic pistol, a loaded .38–caliber revolver, a

large quantity of cocaine, and a roll of duct tape in the engine compartment. Except for the roll of duct tape, these items were positioned around the car's battery. The duct tape was by the windshield on the driver's side. The 9–millimeter and the .45–caliber handguns each fit the shoulder holster worn by Moore.

The government prosecuted Moore and Armstead in a joint trial. On April 20, 1993, the jury returned its verdict, finding Moore guilty on all counts. It was unable to reach a verdict on the charges against Armstead. The judge declared a mistrial as to Armstead. Moore appeals from his conviction raising numerous points of error which we consider in turn.

## II. ANALYSIS

### A. Conviction Under 18 U.S.C. § 924(c)

Moore was convicted of "us[ing] or carr[ying] a firearm" during a "drug trafficking crime" in violation of 18 U.S.C. § 924(c). He argues on appeal that this conviction must be reversed because the district court's instructions to the jury on the elements of a section 924(c) offense were contrary to the Supreme Court's subsequent interpretation of that statute in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The government concedes that Moore's conviction under section 924(c) should be reversed in light of *Bailey*, but requests that the case be remanded to the district court for resentencing at which time Moore will be subject to a two-level increase under the Sentencing Guidelines for possession of a weapon. We agree that Moore's conviction under section 924(c) must be reversed, and we remand the case for resentencing. *See United States v. Fennell*, 77 F.3d 510 (D.C.Cir.1996) (per curiam).

### B. Sufficiency of the Evidence

Moore further argues that his other convictions must be overturned for lack of sufficient evidence of possession (of either firearms or drugs), a requisite element of each of the charged crimes. In considering a sufficiency of the evidence claim, we review "the evidence *de novo*, in [the] light most favorable to the Government in order to deter-

mine whether a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Moore*, 97 F.3d 561, 563–64 (D.C.Cir.1996) (citations omitted). We draw no distinction between direct and circumstantial evidence. *United States v. Davis*, 562 F.2d 681, 684 (D.C.Cir.1977) (per curiam).

Criminal possession of firearms or drugs may be either actual or constructive. *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982). Constructive possession exists when "the defendant knew of, and was in a position to exercise dominion and control over, the contraband." *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C.Cir.1991). While mere proximity to drugs or guns is not sufficient to establish possession, *see United States v. Lucas*, 67 F.3d 956, 960 (D.C.Cir. 1995), "evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may" suffice, *United States v. Gibbs*, 904 F.2d 52, 56 (D.C.Cir.1990).

The evidence in this case was more than sufficient to support the jury's conclusion that Moore was in possession of the drugs and firearms found under the hood of his car. Moore was driving an automobile registered in his name. He was wearing a bullet-proof vest and an empty shoulder holster. There were three handguns concealed in the car, two of which fit into the shoulder holster Moore was wearing. These handguns were found under the hood lying near a bag filled with cocaine. In addition, the officers found a roll of duct tape under the hood. At trial, a government drug expert testified that these facts give rise to the inference that "some individuals are involved in a drug operation."

Of course, the mere fact that three handguns were found in Moore's car is insufficient to establish possession. However, the presence of the guns in a car owned and operated by Moore coupled with the fact that two of the guns fit the shoulder holster worn by Moore suggests that he knew of and exercised control over the guns. The fact that Moore was driving a bullet-riddled car and wearing a bullet-proof vest strengthens the inference. Moore's connection to the guns suggests possession of the drugs found next to the guns and in Moore's car. *See United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir. 1988) (holding that a defendant's connection to a "tool of the narcotic trade"—in that case a gun—suggests that the defendant exercised control over drugs found in the same locale). In sum, the evidence of possession, though circumstantial, was strong.

Moore complains that his conviction was obtained without "smoking gun" evidence. This claim is frivolous. We have long held that the government need not produce a "smoking gun" to obtain a conviction. *See United States v. Poston*, 902 F.2d 90, 94 n. 4 (D.C.Cir.1990) (holding that "[t]here is no requirement of any direct evidence against the defendant"); *United States v. Torres*, 901 F.2d 205, 224 (2nd Cir.) (holding that a "smoking gun" is unnecessary to sustain a conviction against a sufficiency of the evidence claim), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Kaplan*, 832 F.2d 676, 679 (1st Cir.1987) ("For us to sustain the jury's determinations we need not find a 'smoking gun.'"), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). Indeed, the doctrine of constructive possession necessarily belies Moore's implicit claim that he could be convicted only if caught "red-handed." We therefore reject Moore's claim that the evidence was insufficient to convict.

## C. Severance

### 1. Felon-in-possession Charge

Moore next argues that the district court erred in failing to sever his charge of possession of a firearm by a convicted felon from the other counts of his indictment. Rule 14 of the Federal Rules of Criminal Procedure provides that a district court "may" order that counts be tried separately "[i]f it appears that a defendant ... is prejudiced by joinder of offenses ... for trial together...." FED.R.CRIM.P. 14. "We have long recognized that where a felon-in-possession charge is joined with other counts, the defendant may be unduly prejudiced with respect to the other counts by the introduction of

382

prior crimes evidence that would otherwise be inadmissible under the Federal Rules of Evidence." *United States v. Myles,* 96 F.3d 491, 495 (D.C.Cir.1996). Nevertheless, we have rejected a *per se* rule requiring severance of a felon-in-possession charge from other counts. *United States v. Daniels,* 770 F.2d 1111, 1118 (D.C.Cir.1985). Instead, we have opted for a case-by-case approach, holding that, where a defendant moves before the trial court for severance of such charge, "the trial judge must 'proceed with caution' to avoid undue prejudice." *See United States v. Dockery,* 955 F.2d 50, 53 (D.C.Cir.1992). There are several safeguards short of severance that a district court may employ to avoid "undue prejudice," including a stipulation as to the existence of the prior felony conviction, a bench trial on the 922(g)(1) charge, or a cautionary jury instruction. *Id.* at 54–55.

A district court's ruling on a properly filed motion to sever charges is subject to appellate review, albeit only for abuse of discretion. *United States v. Dockery,* 955 F.2d at 54. In this case, however, Moore failed to file a severance motion with the district court or request that other measures be taken to minimize the prejudice from the joinder of the 922(g)(1) charge. Nevertheless, Moore argues that the district court erred in failing to employ one of the *Dockery* safeguards *sua sponte.* We disagree. It is not the duty of the district court to raise the issue of severance in the first instance. A district court has no *sua sponte* obligation to order the severance of a felon-in-possession charge or take other prophylactic measures. *See United States v. Myles,* 96 F.3d at 496. Where, as here, a defendant fails to move for severance of a charge at the trial level, we will review only for "plain error." *United States v. Clarke,* 24 F.3d 257, 262 (D.C.Cir. 1994). The plain error standard of review requires us to ask: "(1) whether there is unwaived legal error, (2) whether the error was 'plain' or 'obvious' under current law, and (3) whether the error was prejudicial." *United States v. Fennell,* 53 F.3d 1296, 1301 (D.C.Cir.1995) (internal quotations omitted).

Relying on our opinion in *Dockery,* Moore argues that the failure to sever the felon-in-

possession charge in this case unfairly prejudiced his right to a fair trial because his otherwise inadmissible prior conviction "was continually presented to the jury throughout the trial." The government responds that, under *Dockery,* any unfair prejudice to Moore was eliminated by the fact that the prosecutor stipulated to the existence of Moore's prior felony conviction and "did not mention the specific nature of the underlying felony conviction to the jury" at any time during trial. But we did not hold in *Dockery* that a prosecutor may refer to the existence of a defendant's prior felony conviction with impunity so long as he does not mention its specific nature. Indeed, the specific nature of the underlying felony was not put before the jury in *Dockery. See* 955 F.2d at 56 n. 5. We nonetheless held that the government's "repeated[ ]" references to the defendant's prior conviction during trial constituted "undue prejudice." *Id.* at 50–51.

*Dockery* stands for the proposition that a stipulation may reduce the prejudice flowing from the joinder of a felon-in-possession charge, *id.* at 54, but a defendant may nonetheless be unduly prejudiced by repeated and gratuitous references to the existence of the previous conviction, *see id.* at 56. The question then is whether the references to the previous conviction were legitimate or gratuitous. *See id.; cf. United States v. Myles,* 96 F.3d at 497 (asking whether references to the specific "nature of the predicate offense" were legitimate or "gratuitous[ ]"). In this case we hold that all the government's references were legitimate.

Moore notes that the existence of his previous conviction was repeated to the jury five times. Our opinion in *United States v. Myles* makes clear that three of these references were entirely proper. The first reference to Moore's previous conviction occurred when, prior to trial, the district court read the indictment containing the felon-in-possession charge to the jury. We held in *Myles* that it is appropriate for a judge to read the indictment to the jury even if the jury is thereby informed of the existence of a defendant's prior felony conviction. *Id.* at 496. The second reference to Moore's previous conviction occurred during the government's

opening statement. We held in *Myles* that this too is appropriate. *Id.* The previous conviction was again referenced by the prosecutor when he announced the stipulation that "Moore ... had a previous felony conviction, the maximum penalty which exceeded one year." This too is proper, as it is analogous to the introduction into evidence of the certified conviction in *Myles. Id.* The other purported references to Moore's previous conviction were, in fact, nothing more than jury instructions that Moore was charged with possession of a firearm as a convicted felon. Instructing the jury that one of the counts against the defendant is a felon-in-possession charge can hardly be considered a gratuitous reference to the previous conviction. In sum, none of the references by the court or the prosecutor to Moore's previous conviction were unnecessary or gratuitous. As a result, we cannot say that the legitimate references to Moore's previous conviction created "undue prejudice." Moore is not entitled to a reversal of his convictions absent such prejudice.

## 2. Co-defendant

As with joined charges, a court "may" sever joined defendants "[i]f it appears that a defendant ... is prejudiced by joinder of ... defendants ... for trial together." FED. R.CRIM.P. 14. Normally, we review a district court's denial of a motion to sever defendants for abuse of discretion. *United States v. Tarantino,* 846 F.2d 1384, 1398 (D.C.Cir.) (per curiam), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988).

■ Moore asserts that severance was required in this case because it presented the "classic case of irreconcilability"—"one codefendant pointing the accusing finger directly at the other." The parties dispute whether Moore preserved this issue for appeal. Only Armstead filed a pre-trial motion for severance. Moore, however, argues that this motion should be attributed to him based on an agreement between the parties and the court that all defense "objections" be deemed jointly made. But the agreement applied only to "objections," not motions, for the stated purpose of eliminating the need "for both [defendants] to stand[ ] up and say[ ] we join." Moreover, even were we to attribute

Armstead's severance motion to Moore, the motion did not raise "irreconcilable defenses" as a basis for severance. A party is precluded from raising on appeal a basis for severance not made at trial in the severance motion. *Cf. United States v. Johnson,* 802 F.2d 1459, 1465 (D.C.Cir.1986) (holding that a defendant waives "any legal objections not actually articulated at trial"). The only basis for severance asserted in Armstead's motion was that a joint trial prevented him from calling his co-defendant, Moore, to testify. Moore cannot now object to the district court's failure to sever on the ground of "irreconcilable defenses."

Alternatively, Moore contends that his mid-trial request for severance preserved the "irreconcilable defenses" issue for appeal. We disagree. Rule 12 of the Federal Rules of Criminal Procedure provides that motions to sever not made "prior to trial" are considered waived. FED R.CRIM. P. 12(b)(5), (f). A district court "for cause shown may ... grant relief from the waiver." FED. R.CRIM.P. 12(f). Assuming *arguendo* that unexpected developments at trial constitute "cause" for granting relief from a waiver, Moore even then never asserted to the district court the ground he now raises. *See United States v. Johnson,* 802 F.2d at 1465 (holding that a defendant waives "any legal objections not actually articulated at trial"). The only ground for severance he asserted was Armstead's attempt to introduce Moore's testimony from the suppression hearing. The ground of irreconcilable defenses was not preserved for appeal. We therefore review the district court's failure to sever on the ground of "irreconcilable defenses" only for "plain error." *United States v. Clarke,* 24 F.3d at 262.

Moore maintains that severance was required in this case because he and Armstead planned to point the accusing finger at one another at trial. The Supreme Court rejected a similar argument in *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993), where four defendants asserted that severance was necessary because they each "claim[ed] they [were] innocent and each accuse[d] the other of the crime." The Supreme Court held that sever-

ance is necessary "under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. at 938.

Under *Zafiro*, the mere fact that Moore and his co-defendant intended to and did point the accusing finger at one another during the joint trial does not require that their trials be severed. Therefore, the district court did not err, much less plainly err, in failing to sever the trials.

### D. Expert Testimony

■ During the government's case-in-chief, Detective Tyrone Thomas of the MPD testified as an expert in the use and trafficking of narcotics. He testified, over Moore's objection, that duct tape such as that found under the hood of Moore's car is often used "by people in the drug world to bind hands, legs, and mouths of people who are either being robbed in the drug world or who need to be maintained." Moore argues that the district court erred in permitting this testimony. But Rule 702 of the Federal Rules of Evidence provides that expert testimony is permissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702. The fact that duct tape is a tool of the narcotics trade is likely beyond the knowledge of the average juror but is relevant to the issue of Moore's intent to distribute the drugs found in his possession. Therefore, the expert's testimony satisfied the requirements of Rule 702.

Moore argues that even if the expert testimony was "helpful" to the jury, it should have been excluded under Rule 403 because its prejudice "substantially outweighed" its probative value in that the evidence indicated to the jury that Moore was a violent individual who binds people with duct tape. While the expert testimony may well have prejudiced Moore, the evidence had significant probative value. "[T]he trial judge has broad discretion" on Rule 403 balancing questions. *United States v. Mitchell*, 996 F.2d 419, 423 (D.C.Cir.1993). We cannot say that the

court abused its discretion by admitting the testimony.

### E. Prosecutorial Misconduct

Moore alleges that he was unfairly prejudiced by several improper prosecutorial remarks. Three of these remarks warrant discussion.

#### 1. Comment on Defendant's Silence

■ Moore raises a colorable claim of improper prosecutorial comment on his post-arrest silence. During the direct examination of Officer Sanders, the prosecutor asked the officer if the defendants said anything when the guns and drugs were found under the hood of the car. Defense counsel did not object to this question, and the officer answered "No." Then, during closing argument, the prosecutor argued to the jury that if Moore "didn't know the stuff was underneath the hood, [he] would at least look surprised. [He] would at least [have] said, 'Well, I didn't know it was there.'" Defense counsel objected to this line of argument. The judge called the attorneys to the bench. Armstead's counsel stated that she believed the prosecutor was improperly "comment[ing]" on post-arrest silence." The prosecutor stated that he had not done so. The court agreed with defense counsel, but nevertheless overruled the objection.

Our separately concurring colleague denies that appellant asserted his in-custody status. However, both in the trial court at the bench conference and twice in the brief on appeal, the defense counsel referred to the prosecution's improper use of "post-arrest" silence. To hold this insufficient to bring the subject before the court seems to us to split the hair far too finely. In any event, the trial judge obviously understood that the issue of post-arrest silence was before him as counsel for the two sides briefly argued the subject. Indeed, counsel for the co-defendant expressly stated, "Your Honor, it is completely improper for him to comment on post-arrest silence." [1]

Our colleague supposes that our opinion "stands for the proposition that a party need not assume the burden to prove facts rele-

---

1. Objections of each defendant enured to the      benefit of the other. *See supra* at 383.

vant to a legal argument [on appeal]." The trial judge at the point when the question was raised ruled that the prosecuting attorney had done precisely what the defense attorney accused him of. The judge's statement "I think you did that," is not, as our colleague suggests, ambiguous. The referent of the pronoun "that" is clearly the last preceding "accusation" denied by the prosecution—that is, "commenting on post-arrest silence." Plainly, therefore, the trial judge accepted the defense's proposition that the prosecutor had commented on post-arrest pre-trial silence. It is not readily apparent what more the defense attorney needed to, or indeed could have done to preserve the question on the present record.

The Fifth Amendment to the Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V. To give full effect to this protection, the Supreme Court has held that "the fifth amendment ... forbids ... comment by the prosecution on the accused's silence...." *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).[2] *Griffin,* and the cases upon which it relied, concerned the prosecution's comment on defendant's failure to testify at trial. Arguably, *Griffin* did not determine the propriety of prosecutorial comment on a defendant's pretrial silence, and our colleague rightly notes that the self-incrimination clause of the Fifth Amendment does not on its face refer to rights accruing before trial. However, the Supreme Court has elsewhere made clear that "the prosecution may not ... use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation" when he was "under police custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624 n. 37, 16 L.Ed.2d 694 (1966). Thus the Supreme Court, in *Miranda* among many other decisions, has made it clear that the protection extends backward at least to the time of custodial interrogation.

Although in the present case, interrogation per se had not begun, neither *Miranda* nor any other case suggests that a defendant's protected right to remain silent attaches only upon the commencement of questioning as opposed to custody. While a defendant who chooses to volunteer an unsolicited admission or statement to police before questioning may be held to have waived the protection of that right, the defendant who stands silent must be treated as having asserted it. Prosecutorial comment upon that assertion would unduly burden the Fifth Amendment privilege. Additionally, a prosecutor's comment on a defendant's post-custodial silence unduly burdens that defendant's Fifth Amendment right to remain silent at trial, as it calls a jury's further attention to the fact that he has not arisen to remove whatever taint the pretrial but post-custodial silence may have spread. We therefore think it evident that custody and not interrogation is the triggering mechanism for the right of pretrial silence under *Miranda.* Any other holding would create an incentive for arresting officers to delay interrogation in order to create an intervening "silence" that could then be used against the defendant.

Therefore, nothing else appearing, the prosecution's use of Moore's pre-trial silence in its summation violated his Fifth Amendment rights. However, much else appears. Although it is plain from *Griffin* and *Miranda* that the prosecution may not use a defendant's silence in its case-in-chief, the Supreme Court has long "recognized that the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence." *Jenkins v. Anderson,* 447 U.S. 231, 235, 100 S.Ct. 2124, 2127, 65 L.Ed.2d 86 (1980) (relying on *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926)). The government attempts to justify its use of Moore's silence by a misinterpretation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), an earlier decision concerning the same issue

---

**2.** Although *Griffin,* like many of the cases we cite herein, arose from a state rather than a federal prosecution, the Supreme Court has held that the Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination against the states with "the same standards" as in a federal proceeding. *Malloy v. Hogan,* 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964).

authoritatively decided in *Jenkins,* which disallowed the use of defense silence even for impeachment under the circumstances of that case.

In *Doyle,* the prosecution had impeached the defendant at trial by cross-examining him about his failure to have told his exculpatory story "after receiving *Miranda* warnings at the time of his arrest." *Id.* at 611, 96 S.Ct. at 2241. The majority held that the silence could not be used even for impeachment purposes because, "while . . . the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Id.* at 618, 96 S.Ct. at 2245. It would, the Court held, therefore be "fundamentally unfair and a deprivation of due process" to allow the use of the warned arrestee's silence to be used even for impeaching an explanation first offered at trial.

In the present case, the government, on appeal and apparently at trial, relies on a fundamental misunderstanding of the *Doyle* decision. The prosecution argues that that decision stands for the proposition that "the use at trial of a defendant's 'silence at the° time of arrest and after receiving *Miranda* warnings, violate[s] the due process clause of the Fourteenth Amendment.'" Thus, the prosecution contends, its use of Moore's silence did not violate his rights against self-incrimination as he had not yet received his *Miranda* warning at the time that he stood silent.[3] But the government's construction of *Doyle* relies on quoted language from that decision taken not just out of the context of the decision as a whole but even out of context of the sentence in which the language appears. The entire sentence from which

the prosecution has surgically excised a favorable portion reads "We hold that the use *for impeachment purposes* of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the due process clause of the Fourteenth Amendment." *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245 (emphasis added). It is plain that the significance of the *Miranda* warnings in establishing the ability of the prosecution to use the defendant's silence is limited to impeachment. Indeed, the *Doyle* Court noted that even "the State does not suggest petitioners' silence could be used as evidence of guilt," but only contended that it was necessary for cross-examination and impeachment of "petitioners' exculpatory story." *Id.* at 617, 96 S.Ct. at 2244.

Neither *Doyle* nor any other case stands for the proposition advanced by the prosecution that the defendant's silence can be used against him so long as he has not received his *Miranda* warnings. Logically, none could.

It simply cannot be the case that a citizen's protection against self-incrimination only attaches when officers recite a certain litany of his rights. The Supreme Court's purpose in requiring the arresting authorities to advise a defendant of his right to silence and counsel in *Miranda* was to assure that those rights were properly safeguarded before any *statements* he made could be used against him, not his silence. *See Miranda,* 384 U.S. at 467–79, 86 S.Ct. at 1624–30.[4] To hold, as the Government contends the Supreme Court did in *Doyle,* that the failure to give those same warnings permits the state to use a defendant's silence against him turns a whole realm of constitutional protection on its head.

---

**3.** As this is a federal and not a state case, the Fourteenth Amendment Due Process Clause of course has no applicability. *Doyle* was a state prosecution. In *Doyle,* the majority relied on the due process analysis for disposition of that appeal from a state conviction. Any applicability of the Fifth Amendment to that case would have had to enter by incorporation. The present case is a federal prosecution like *Raffel* and the defendant asserts his rights directly under the Fifth Amendment.

**4.** We do not understand our colleague's statement: "the distinction drawn by the majority

between the use of silence versus statements when a defendant is in custody cannot be logically defended." Concurring op. at 391–92. That distinction, of course, is the very root of self-incrimination jurisprudence, as illustrated by the *Miranda* warnings. The defendant has the right to remain silent; that is, his silence cannot be used against him. That right is waivable; therefore if he chooses to make statements they can be used against him. *See Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625 ("[T]he warning of the right to remain silent must be accompanied by an explanation that anything said can and will be used against the individual in court.").

Our colleague accepts the Government's position on *Doyle* because of a fundamental misunderstanding not only of the nature of that decision but of the general law applicable to the use of a defendant's silence against him. Reflective of this misunderstanding is his challenge that "the majority does not and cannot explain why the logic of *Doyle* and *Weir* is cabined to impeachment." Concurring Op. at 395. In fact, that "logic" deals with nothing else. *Doyle* is an exception to an exception to the general rule. The general rule regarding a defendant's silence is that it cannot be used. The defendant's testifying creates an exception allowing the testimony to be used for the purpose of impeachment. The presence of the *Miranda* warning before the silence causes an estoppel that restores to the defendant the protection against the use of the silence. Both the majority and the dissent in *Doyle* make that plain.

The *Doyle* majority noted that even "the State does not suggest petitioners' silence could be used as evidence of guilt[.] [I]t contends that the need to present to the jury all information relevant to the truth of petitioners' exculpatory story fully justifies the cross-examination that is at issue." 426 U.S. at 617, 96 S.Ct. at 2244. The dissent, which did not accept the estoppel theory and would have upheld the use of the silence for impeachment, nonetheless recognized that "as long ago as *Raffel v. United States,* 271 U.S. 494 [46 S.Ct. 566], this Court recognized the distinction between the prosecution's affirmative use of the defendant's prior silence and the use of prior silence for impeachment purposes." 426 U.S. at 628, 96 S.Ct. at 2249 (Stevens, J., dissenting). In short, all the justices recognized the general rule and the impeachment exception. A minority would not have recognized the exception to the exception. Our colleague's assertion that in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam), "the Supreme Court agreed with precisely the position espoused by the government here" is simply incorrect. *Fletcher* did not in any sense involve the use of a defendant's silence as bearing upon his guilt. *Fletcher,* like *Doyle,* was an impeachment case. As our colleague correctly notes, the Supreme Court held that *Doyle* did not apply, because

*Miranda* warnings had not been offered. We have no doubt that this is controlling law in the case of the use of silence for impeachment. The present case is not an impeachment case, and neither *Doyle* nor *Fletcher* has anything to do with it. Therefore the prosecution's use of appellant's silence in its jury argument violated his rights under the Fifth Amendment as applied in the *Griffin* decision, unless some other factor permits the use of such silence.

The government contends that we should find such a factor permitting the use of the silence in the fact that the silence to which the prosecutor referred occurred before Moore was placed under arrest. Regardless of whether or not we would agree with the government that the *Griffin/Doyle* exclusion does not apply to pre-arrest silence, the record does not support that argument in this case. Here the prosecutor relied on the silence of a defendant in custody. The silence of an arrested defendant, under *Griffin,* is an exercise of his Fifth Amendment rights which the Government cannot use to his prejudice.

A defendant might cite *Jenkins v. Anderson, supra,* for the proposition that the *Griffin* protection extends to pre-arrest silence. That case upheld "impeachment by use of pre-arrest silence," 447 U.S. at 240, 100 S.Ct. at 2130, against a Fourteenth Amendment due process attack based on *Doyle.* Because the Court in that case relied on the impeachment rationale to uphold the use of the evidence rather than the pre-arrest rationale, one might argue that it supports the proposition that pre-arrest silence is to receive the same Fifth Amendment protection as post-arrest silence; that is, the prosecution may use pre-arrest silence for impeachment, but not as evidence of guilt. Such an argument misreads the *Jenkins* decision. In fact, the *Jenkins* Court expressly reserved that question. "Our decision today does not consider whether or under what circumstances pre-arrest silence may be protected by the Fifth Amendment." 447 U.S. at 236 n. 2, 100 S.Ct. at 2128 n. 2. Instead, the *Jenkins* Court relied on the impeachment rationale because it was so clearly available, leaving the unsettled question of applicability

of the Fifth Amendment to pre-arrest silence for another day.

Our concurring colleague questions what "unsettled" law we are referencing. We would refer him to the *Jenkins* opinion, 447 U.S. 231, 236 n. 2, 100 S.Ct. 2124, 2128 n. 2, 65 L.Ed.2d 86: "Our decision today does not consider whether or under what circumstances pre-arrest silence may be protected by the Fifth Amendment. We simply do not reach that issue because the rule of *Raffel* clearly permits impeachment even if pre-arrest silence were held to be an invocation of the Fifth Amendment right to remain silent." We do not, as our colleague suggests, misread *Jenkins,* nor did Justice Stevens in his concurrence fear a misreading. Justice Stevens noted, as we have, that the majority in *Jenkins* held "that a defendant who elects to testify in his own behalf waives any Fifth Amendment objection to the use of his prior silence for the purpose of impeachment." 447 U.S. at 241, 100 S.Ct. at 2131. He further recognized that holding as squarely supported by *Raffel.* His reasons for writing separately lay not in a belief that the majority could be misread but in his belief that in the "pre-custody context," silence was not constitutionally protected. His position, shared by our colleague today, addresses a question we need not decide, the question the Supreme Court expressly left open in *Jenkins.*

Our colleague questions "how the reasoning in *Jenkins* would be any different in a situation in which a prosecutor attempts to use a defendant's silence as probative of his or her guilt." [Concurrence at 9.] We did not feel compelled to explain how it would be different since it is not apparent how it would be similar. The *Jenkins* Court relied entirely on the impeachment rationale drawn from *Doyle* and never in any fashion held, implied, or reasoned that the defendant's silence could have been used to establish his guilt. Indeed, the Court expressly "h[e]ld that *impeachment* by use of prearrest silence does not violate the Fourteenth Amendment." 447 U.S. at 240, 100 S.Ct. at 2130 (emphasis added). The impeachment exception follows from the waivable nature of the right to remain silent. Because "impeachment fol-lows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial," the court "conclude[d] that the Fifth Amendment is not violated by the use of pre-arrest silence to *impeach* a criminal defendant's credibility." *Id.* at 238, 100 S.Ct. at 2129 (emphasis added).

The Court clearly delineated the impeachment exception to evidence that would otherwise be a burden upon Fifth Amendment rights in its discussion of *Raffel* and related cases, *id.* at 235–37, 100 S.Ct. at 2127–29, even noting "that a statement taken in violation of *Miranda v. Arizona,* ... may be used to impeach a defendant's credibility," *id.* at 237, 100 S.Ct. at 2129 (citing *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)). As the *Jenkins* Court noted, the *Harris* decision allowed the use of the improperly obtained statements on the ground that a defendant's privilege to testify or refusal to do so "cannot be construed to include the right to commit perjury.... Having voluntarily taken the stand, [a defendant is] under an obligation to speak truthfully and accurately," and his prior statement, in *Harris,* or silence, in *Doyle,* can be used against him. *Id.* at 238, 100 S.Ct. at 2129 (quoting *Harris,* 401 U.S. at 225, 91 S.Ct. at 645). Here there was no testimony by the defendant; there was no impeachment; neither *Doyle* nor *Jenkins* nor *Harris* creates an exception to the general rule that a defendant's silence may not be used against him. The only possible justification for the prosecution's use in this case is the as yet not definitively determined admissibility of pre-arrest muteness.

In light of the Supreme Court's silence on that subject, the government's argument for a pre-arrest exception to the *Griffin* exclusion is surely made in good faith, but the record does not require that we address it. The prosecutor's comment to the jury is at least ambiguous as to when the silence occurred in relation to the arrest of Moore and his co-defendant. The record is not absolutely clear as to when Moore was placed under arrest, either on the multiple and relatively serious traffic offenses or on the drug and weapons offenses. However, the critical

event is not necessarily the formal arrest of the defendant, but rather the time at which he came into custody. By way of comparison, the Supreme Court in *Berkemer v. McCarty*, noted that "we have frequently reaffirmed the central principle established by [the *Miranda*] case: if the police take a suspect into custody and then ask him questions without informing him of his rights [against self-incrimination and to counsel], his responses cannot be introduced into evidence to establish his guilt." 468 U.S. 420, 429, 104 S.Ct. 3138, 3144, 82 L.Ed.2d 317 (1984) (footnote omitted). Similarly, for the reasons already set forth, with or without *Miranda* warnings, Moore's silence may not be used to establish his guilt. On the evidence before the jury in the present case, by the time the defendant exercised the silence to which the prosecutor referred, he had been stopped on multiple traffic offenses and the police had discovered contraband under the hood of his car. Whether the words placing him under arrest had or had not been spoken, no one could suppose that he was still free to leave.[5] Indeed, the trial judge, no doubt in a better position than we to resolve the ambiguity of timing, stated "I think you did that" when Armstead's counsel argued that the prosecutor was improperly commenting on post-arrest silence and the prosecutor asserted that he had not done so.[6]

To summarize, the law is plain that the prosecution cannot, consistent with the Constitution, use a defendant's silence against him as evidence of his guilt. The prosecution may, however, use his silence for impeachment if he testifies. Even as to impeachment, the prosecution may not use the silence after the defendant is warned of his *Miranda* rights. There may be another exception to the bar against the use of silence where the silence occurred before the defendant's arrest. Neither exception applies in this case as Moore did not testify and the record does not support the proposition that the prosecution was referring to pre-arrest silence. Therefore, Moore is correct that the prosecutor's comment on his pre-trial silence violated his constitutional rights.

We therefore must reverse Moore's conviction unless we determine that the prosecution's error was harmless beyond a reasonable doubt. *Brecht v. Abrahamson*, 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717–18, 123 L.Ed.2d 353 (1993) (holding that *Doyle* errors are subject to *Chapman* harmless error analysis which asks whether the error was harmless beyond a reasonable doubt). The prosecutor's statement was an allusion to evidence of Moore's silence which came in without objection. The jury was thus already aware of the silence at the time Moore objected to the prosecutor's reference to such in closing argument. Hence, the reference to Moore's silence in closing argument created little if any additional prejudice. It

---

5. For reasons not apparent to us, our colleague finds the *Berkemer* Court's recognition of the origin of the "free to leave" language in Fourth Amendment jurisprudence, 468 U.S. at 436–37, 104 S.Ct. at 3148–49, renders it suspect as a test for custody in Fifth Amendment cases. Nonetheless, the *Berkemer* Court, while not affording "talismanic power" to the phrase, recognized that the distinction between a "traffic stop" and being "in custody" rested not only upon the fact that the stop would be "presumptively temporary and brief," but equally upon the motorist's expectations "that in the end he most likely will be allowed to continue on his way." *Id.* at 437, 104 S.Ct. at 3149. In any event, our colleague misunderstands our point, when he takes our reasoning to analyze when the defendant should have been given a *Miranda* warning and reasons further that if the appellant had, instead of remaining silent, promptly admitted that the drugs and guns were his, that confession would not be admissible. Concurring opinion at 394. Exactly our point; defendant did not choose to make that

admission. He chose instead to remain silent. We do not hold that a blurted confession cannot be used against the blurting defendant, even without *Miranda* warnings, in appropriate circumstances. Rather, we hold, without fear of refutation from either our colleague or the government, that a defendant's *silence* as a general rule cannot be used against him. That our colleague finds an exception to the *Miranda* rule against the admission of confessions in no way establishes an exception to the general rule against the use of a defendant's silence.

6. Our colleague is of course correct that we can determine the legal question of custody as well as the district court. What the district court is in a better position than us to determine is whether the prosecution's reference to the defendant's silence would have been understood by contemporaneous listeners (*e.g.,* the jury) to be referring to the defendant's silence before or after the events constituting custody.

would be tantamount to sandbagging to allow a defendant to sit silent while potentially objectionable evidence comes in and then obtain a reversal by objecting to a prosecutor's reference to that evidence. Moreover, the overwhelming evidence "developed at trial establishes guilt beyond a reasonable doubt." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Thus, we are convinced that the prosecutor's improper reference to Moore's post-arrest silence was harmless.

### 2. Inflammatory Reference to Defendant

■ In his opening statement, the prosecutor referred to the defendants as "two armed gunmen driving through the streets of D.C., armed to the teeth, dressed for action, carrying a load of dope...." Moore argues that this was both a misstatement of the facts and inflammatory. Though Moore did not object to this statement at trial, Armstead did. Given the district court's ruling that the objections of one defendant would be considered jointly made, Armstead's objection is attributable to Moore. *United States v. Gatling,* 96 F.3d 1511, 1521 (D.C.Cir.1996) ("Trial court judges have discretion to determine whether each defendant must individually object or whether objections raised by one defendant will count as having been raised for all similarly situated defendants."). Nevertheless, the argument is of no avail.

While "the government must take care to ensure that statements made in opening and closing arguments to the jury are supported by evidence introduced at trial," *United States v. Small,* 74 F.3d 1276, 1280 (D.C.Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 1867, 134 L.Ed.2d 965 (1996), the government's statement here was amply supported by evidence. The evidence at trial established that, at the time of his arrest, Moore was wearing a bullet-proof vest and shoulder holster (*i.e.,* "dressed for action") and was carrying three handguns (*i.e.,* "armed to the teeth") and 184 bags of cocaine (*i.e.,* "carrying a load of dope") under the hood of his car. The prosecutor's statement, supported by evidence, was not improper. *United States v. Perholtz,* 842 F.2d 343, 360 (D.C.Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

### 3. Disparagement of Defense Counsel

■ Moore further maintains that certain comments made by the prosecutor in his closing argument improperly disparaged both defense counsel and the judicial system. Because Moore did not object to these statements as trial, we review only for "plain error." *United States v. Williams–Davis,* 90 F.3d 490, 507 (D.C.Cir.1996). Under the plain error standard of review, we will reverse only if the error was both " 'plain' or 'obvious' under current law" and prejudicial. *United States v. Fennell,* 53 F.3d at 1301.

One of the defining characteristics of our system of justice is that criminal trials are adversary proceedings. *Gagnon v. Scarpelli,* 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973). Vigorous representation is of paramount importance in such a system, for the "system is premised on the well-tested principle that the truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988). As a result, we have held that prosecutorial "attacks on opposing counsel are inappropriate." *United States v. Childress,* 58 F.3d 693, 716 (D.C.Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996). Extending this principle, at least one other circuit has held that prosecutorial argument "casting suspicion not merely on a defense possibly employed by the defendant but on the role of defense counsel in general" is improper. *United States v. Boldt,* 929 F.2d 35, 40 (1st Cir.1991); *cf. United States v. Catlett,* 97 F.3d 565, 572–73 (D.C.Cir.1996) (finding no error where prosecutor referred to defense counsel's closing as a "divert their attention while the thieves get away"-type argument). We agree.

In the government's closing argument in this case, the prosecutor referred to Moore's attorney as a "professional arguer[ ]" who "mucks .... up" the "judicial system." Although the prosecutor's statement could have been construed as a disparagement of the defense attorney and indeed of the role of defense counsel in general, that was not the only possible construction of the argument,

and the district judge, as we noted above, is in a better position to weigh and analyze such situationally specific questions than we. The prosecutor may, perhaps must, point out to the jury that the doubt that will prevent a conviction is a doubt founded upon reason not one suggested by the ingenuity of counsel. While we might have commended a different word choice to the prosecutor in this argument, we cannot conclude that the one adopted by him was erroneous, let alone plainly erroneous. Furthermore, the overwhelming evidence of appellant's guilt makes it unlikely that the statement could have been prejudicial even had it been erroneous.

Moore complains that several other statements made by the prosecutor in his closing argument were also improper. These other statements were so plainly not improper that they do not warrant discussion.

### F.  Ineffective Assistance of Counsel

Finally, Moore alleges ineffectiveness of his trial counsel. To prevail on a claim of ineffective assistance of counsel, a defendant "must prove both incompetence and prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). In order to establish that counsel's performance was incompetent, a defendant must demonstrate "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ Appellant first claims that defense counsel failed to "investigate [the] case [and] contact or subpoena ... trial witnesses who could have established Appellant's innocence." Even had he located these witnesses, the testimony they allegedly would have provided was tangential at best. That the witness would testify as to Moore's legitimate reasons for wearing a shoulder holster and bullet-proof vest seems incredible. Further, the fact that a few people could testify that they never saw Moore place drugs under his hood is of little value. Perhaps the only testimony that might have been helpful to Moore was that "other people regularly drove Appellant's car." *Cf. United States v. Thorne,* 997 F.2d 1504, 1510 (D.C.Cir.) (holding that the fact that four other people shared an apartment with defendant rebutted inference that he was in possession of drugs found in proximity with him), *cert. denied,* 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993). However, even had this testimony been offered to the jury, the evidence connecting Moore to the drugs was so strong as to render any error by defense counsel harmless.

Appellant also claims that defense counsel was ineffective in failing to take some action to minimize the prejudice from the joinder of the felon-in-possession charge. Because we earlier concluded that severance of defendants was not required, defense counsel's failure to so move cannot constitute ineffectiveness. Appellant's other allegations of ineffectiveness by defense counsel appear to be nothing more than attempts to second guess counsel's trial strategy.

### III.  CONCLUSION

For the foregoing reasons, we affirm Moore's convictions for possession of cocaine with an intent to distribute, possession of a firearm by a convicted felon, possession of an unregistered firearm, and possession of unregistered ammunition. Although we find that the prosecutor's reference to Moore's post-arrest silence was constitutionally improper, we are convinced that this error was harmless beyond a reasonable doubt. In addition, we reverse Moore's conviction under 18 U.S.C. § 924(c) and remand the entire case for resentencing.

SILBERMAN, Circuit Judge, concurring:

I would affirm Moore's conviction. I do not join the majority opinion, because I think its crucial *holding*—that the district judge erroneously permitted the prosecutor to use appellant's silence "post custody"—is both an impermissible appellate factual finding and an unjustified extension of constitutional law. The distinction drawn by the majority between the use of silence versus statements

when a defendant is in custody cannot be logically defended. I also believe that Judge Sentelle's extensive discussion of the constitutional framework in which a defendant's pre-arrest, and presumably pre-custody, silence is to be considered proceeds from a false premise. Finally, I think appellant's claim regarding the prosecutor's slighting reference to trial lawyers (including himself) raises a tempest in a teapot.

Appellant urges us to conclude that he was denied a fair trial because of the prosecutor's "improper comments on [his] post-arrest silence." Counsel objected to the prosecutor's closing argument reference to appellant's silence when the guns and drugs were discovered, but he did *not* object when the testimony as to appellant's silence was adduced, so I do not see why appellant did not waive the point altogether. But, in any event, aside from counsel's conclusory statement, appellant points to absolutely nothing to establish that the silence took place post-arrest or even while Moore was "in custody." Appellant's brief contains not a single mention of the factual context in which the silence occurred, much less an argument or citation to the record. The government, for its part, understandably treats the silence to which Moore refers as having taken place pre-arrest, noting that appellant had not yet been given *Miranda* warnings. And at oral argument we, along with counsel, focused on the possible limitation on the prosecutor's use of a defendant's *pre-arrest* silence.

The majority takes from this presentation the rather startling conclusion—not argued by appellant and certainly not shown—"that Moore was in custody" at the time of his commented upon silence and therefore his silence cannot be used against him. Of course, it is the appellant's burden to establish factually that he was in custody as a pre-condition to an argument that the Constitution protects his silence in that situa-

tion. And that this *burden* must be satisfied is an entirely separate inquiry from whether the claim was preserved for appeal—which is how the majority rather obviously misreads my objection.[1] *Compare* Maj. Op. at 384–85. Although appellant's counsel did characterize defendant's status at the relevant time as post-arrest (which the majority does not accept), he never made the alternative argument that if not post-arrest, defendant's silence took place post-custody. In that respect, I do not understand the majority's assertion that the district judge was in a "better position" to make this determination, insofar as the custody argument was not even presented to him and since, when the appellant objected to the prosecutor's reference to Moore's silence, the judge *overruled* the objection.[2] The following colloquy, which occurred during the prosecutor's closing argument, was the *sole* mention of this issue at trial:

Defense Counsel: ... It is completely improper for him to comment on post-arrest silence.

Prosecutor: Your honor, there is no proof after arrest that—that is a mischaracterization any how of what was going on....

The Court: Well, the objection is overruled, but I think *you did that.*

(Emphasis added.) Whatever the judge meant by "that," it was certainly not a finding that appellant was in custody. I suppose, then, that the majority opinion stands for the proposition that a party need not assume the burden to prove facts relevant to a legal argument that an appellate court develops *sua sponte* (but I certainly hope not).

Turning to the majority's own custody "finding" and its Fifth Amendment constitutional analysis, the majority asserts that after the drugs and guns were found in the car's engine compartment no reasonable person would feel "free to leave" the scene,

1. It may well be that an "argument" that a defendant's silence occurred post-arrest can, for purposes of appellate review, be thought to implicitly include the claim that the events occurred post-custody.

2. The custody determination, in any event, does not call for the trial court's superior fact-finding

capacity, *cf. Thompson v. Keohane,* —— U.S. ——, —— ——, 116 S.Ct. 457, 465–67, 133 L.Ed.2d 383 (1995), and certainly, as a legal question, it does not rest upon the effect on contemporaneous listeners, whatever relevance that notion has to this case, *see* Maj. Op. at 389 n.6, especially when the "discussion" took place at the bench, not in front of the jury.

relying on *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). But the free-to-leave test is one drawn from Fourth Amendment search and seizure cases, not Fifth Amendment cases. Fifth Amendment considerations, *i.e.*, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are only triggered by custodial interrogation or its equivalent. *Berkemer*, 468 U.S. at 436–40 & n. 25, 104 S.Ct. at 3148–50 & n. 25; *cf. United States v. Gale*, 952 F.2d 1412, 1415–16, n. 4 (D.C.Cir.1992) (noting that although appellant was not free to leave, he was not subject to "full-blown" arrest and therefore no *Miranda* violation occurred when the police officer questioned appellant). *Miranda*'s ruling was prompted by: "incommunicado interrogation of individuals in a police-dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights. An understanding of the nature and setting of this in-custody interrogation is essential to our decision today." 384 U.S. at 445, 86 S.Ct. at 1612. A defendant must establish the required element of compulsion to activate Fifth Amendment considerations.

*Berkemer* hardly suggests that on the facts with which we are presented we should conclude that appellant was in "custody" for Fifth Amendment purposes when his silence was noted. Although the Court recognized that a defendant was entitled to a *Miranda* warning if placed in custody that was substantially the same as a formal arrest, the Court carefully drew that threshold higher than Moore could meet in this case. In *Berkemer*, a trooper pulled a defendant over after observing his car weave in and out of lanes. The officer asked the defendant to get out of the car and noticed that the defendant had enormous trouble standing. The officer admitted at that point that the defendant's freedom to leave was terminated, although he did not convey this to the defendant. The trooper had the defendant take a sobriety test, which the defendant failed. The officer then began to question the defendant about his alcohol consumption, but did not give *Miranda* warnings. The defendant's *answers* were testified to. The Supreme Court held:

[N]othing in the record indicates that respondent should have been given *Miranda* warnings at any point prior to the time [the trooper] placed him under arrest.... And *respondent has failed to demonstrate* that, at any time between the initial stop and the arrest, *he was subjected to restraints comparable to those associated with a formal arrest.*

*Id.* at 441, 104 S.Ct. at 3151 (emphases added). The court more generally observed that "[t]he ... noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*" *Id.* at 440, 104 S.Ct. at 3150.

The majority ignores *Berkemer*'s presumption that traffic stops are non-custodial and offers nothing to distinguish this case from the factors the Court thought critical in reaching its holding. The *Berkemer* Court emphasized the relatively temporary and brief nature of traffic stops—a far cry from station house interrogation, which frequently is prolonged, and, unlike the traffic stop, police-dominated and not in view of the public. *Id.* at 438–39, 104 S.Ct. at 3149–50. Yet no mention is made in the majority's opinion of the time that elapsed, the number of officers present, or the flow of traffic in the area.

By holding that, for Fifth Amendment purposes, appellant was in custody equivalent to an arrest, the majority would appear to be concluding—particularly by relying on *Berkemer*—that instantaneously, when the drugs and guns were discovered, he should have been given a *Miranda* warning—for after all, he was at that moment in custody. No time should have been permitted to lapse during which his silence could be observed before a *Miranda* warning should have issued. Yet, paradoxically, the majority agrees that had Moore blurted a *confession* at that moment, it could be used against him, Maj. Op. at n.5, because it is only the defendant's *silence* which receives protection as a general rule. The majority explains this distinction between a post-custodial pre-arrest statement, which is admissible, and post-custodial pre-arrest silence which is not, by characterizing the former as a "waiver" of the right to

remain silent. But how could a defendant be thought to have effectively waived a right to remain silent before he was given a *Miranda* warning? The whole purpose of *Miranda* was to ensure that any defendant's statement was an informed waiver. I am afraid the majority's logic is hopelessly tangled.

It is simply impossible to understand why the Constitution should be read as permitting a prosecutor to produce evidence that a defendant in this situation *sua sponte* admitted that the drugs and guns were his but not that he remained silent under circumstances where an innocent man would surely have said or done something reflecting shocked surprise. Suppose, for instance, the defendant had shrugged his shoulders in a gesture indicating defeated resignation? Would not that evidence be at least constitutionally admissible? [3] In any one of these situations, the defendant's behavior is a form of communication that shows guilty knowledge. In that respect, silence can be just as probative as a statement and, absent coercion or deception, [4] there can be no plausible constitutional bar to its admission.

The majority's suggestion that my understanding of the Constitution creates "an incentive for arresting officers to delay interrogation in order to create an intervening 'silence' that could then be used against the defendant," Maj. Op. at 385, seems rather far-fetched. It is hard to imagine in a true custodial (virtual arrest) situation police officers remaining silent for some period of time; but if they did so, surely it would be to induce the defendant to speak, not to remain silent, and under the majority's rationale, paradoxically, such a statement would be admissible. Indeed, if it were not admissible, that could only be because a lengthy police silence in such circumstances could be thought to be an effort to circumvent *Miranda*. But that just makes clear

my fundamental point that it is only after a *Miranda* warning, or at the very minimum, the time that a *Miranda* warning should have been given, *see supra* n. 4, that a defendant's silence could be thought protected. It is obvious that in this case the *Miranda* warning could not possibly have been given in the split second between the discovery of the guns and drugs and defendant's observed silence.

It would appear that the majority's new found "rule" stems from its reading of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and *Miranda* (and its progeny), Maj. Op. at 385, but nothing in those cases supports, let alone establishes, such a principle. The Supreme Court in *Griffin* held that a prosecutor could not comment on a defendant's failure to testify *at trial* because that would penalize the defendant's right not to be a witness against himself. *Griffin* thus bars commenting on a particular type of defendant silence—failure to testify at trial—which is certainly not the sweeping prohibition that the majority reads it to be. Maj. Op. at 385. It applies within the courthouse walls and no further. A defendant's silence before trial would be fair game (constitutionally speaking) for a prosecutor were *Griffin* the only barrier. And *Miranda*, as we have noted, only established that warnings must be given to an individual when subjected to custodial interrogation. *See* 384 U.S. at 477, 86 S.Ct. at 1629.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), however, the Court imposed a bar against using a defendant's silence following *Miranda* warnings, but—and this is analytically important—not on self-incrimination grounds. *Doyle* was explicitly limited to *due process* considerations, *see Wainwright v. Greenfield*, 474 U.S. 284, 291 n. 7, 106 S.Ct. 634, 639 n. 7, 88 L.Ed.2d 623 (1986), a point that seems lost, as Judge

---

3. Evidentiary rules, of course, may limit the use of silence via prohibitions against hearsay and unfairly prejudicial information, *see, e.g., United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), but the *constitutional* bar against using silence suggested by the majority simply does not exist.

4. It is possible to imagine a scenario, even in the absence of *Miranda* warnings, in which the circumstances may raise legitimate due process concerns, such as the use of silence which follows 15 hours of uninterrupted, purposefully inflammatory questioning in a station house. Whatever the constitutional disposition of that type of scenario, the facts of this case do not suggest the same concerns.

Tatel recognizes, in the majority opinion. *See, e.g.*, Maj. Op. at 386–87. *Doyle* rested "on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial"—a sort of estoppel notion. *Id.* at 291, 106 S.Ct. at 638.

The majority nevertheless chastises the government for turning "a whole realm of constitutional protection on its head" by suggesting *Doyle* was limited to post-*Miranda* warning situations. Maj. Op. at 386. Yet in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam), the Supreme Court agreed with precisely the position espoused by the government here and flatly rejected the reasoning offered by my colleagues. The Court refined *Doyle* by noting that the prosecutor's impeachment use of post-arrest silence absent *Miranda* warnings does not implicate due process considerations; the unfairness that concerned the Court in *Doyle* resulted from the "affirmative assurances embodied in the *Miranda* warnings." *Id.* at 607, 102 S.Ct. at 1312. Contrary to the majority's view, *see* Maj. Op. at 386, *Doyle* was strictly limited to situations involving explicit assurances.[5]

The majority dismisses *Weir* and *Doyle* because in those cases the government had used a defendant's silence to impeach his testimony, and, therefore, it is claimed that they simply do not bear on the question whether a defendant's silence can be used as part of the government's affirmative case. To be sure, evidence which is used only for impeachment will, at times, be treated differently than if it were used when a defendant does not testify. *See, e.g., Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). But the majority does not and cannot explain why the *logic* of *Doyle* and *Weir* is cabined to impeachment. The majority stands only on

its general rule. *See* Maj. Op. at 386–88. A close look at the cases upon which my colleagues rely, however, reveals that the "rule" is, in fact, a creature of the majority's own making, and the reasoning of *Doyle* and *Weir* cannot be limited.

This same flawed analysis drives Judge Sentelle's treatment of pre-arrest, non-custodial silence as well (which Judge Tatel does not join)—a discussion that is all the more troubling because it is completely irrelevant to the determination that the silence at issue here took place *after* the defendant was in custody. He speaks of the applicability of the Fifth Amendment to pre-arrest silence as an "unsettled question" because *Jenkins* limited its discussion to impeachment (admittedly, the footnote in *Jenkins* suggests as much, *see Jenkins*, 447 U.S. at 241 n.2, 100 S.Ct. at 2131 n. 2). *Cf. id.* at 241, 100 S.Ct. at 2131 (Stevens, J., concurring) (noting that the majority's emphasis in *Jenkins* on impeachment "incorrectly implies that a defendant's decision not to testify at his own trial is constitutionally indistinguishable from his silence in a precustody context"). I am afraid that Judge Sentelle has misread *Jenkins* just as Justice Stevens feared. *Jenkins* did limit itself to impeachment, but only because it was explaining the contours of *Doyle*. Thus, the Court relied on the following rationale:

> [N]o governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case.

447 U.S. at 240, 100 S.Ct. at 2130. Again, Judge Sentelle, whether speaking for himself or the majority, does not—nor indeed could he—explain how the reasoning in *Jenkins* would be any different in a situation in which a prosecutor attempts to use a defendant's silence as probative of his or her guilt. We are simply left with the unpersuasive refer-

---

5. *Weir* is but one of a series of cases which limit *Doyle*, quite strictly, to the specific facts therein: the use of post-arrest silence induced by *Miranda* warnings or some government assurance that silence would not be used against a defendant. *See, e.g., Roberts v. United States*, 445 U.S. 552, 561, 100 S.Ct. 1358, 1364–65, 63 L.Ed.2d 622

(1980); *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). The Court again emphasized the limits of *Doyle* in *Jenkins v. Anderson*, 447 U.S. 231, 239–40, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980), holding it inapplicable to situations involving pre-arrest silence.

ence to the majority's general rule, *see* Maj. Op. at 388, a rule which floats free of both the Self–Incrimination and Due Process Clauses.

\* \* \* \*

The majority's discussion of the prosecutor's remarks concerning defense counsel, Maj. Op. at 390–91, apparently rests on a misunderstanding of the record. The prosecutor did not actually accuse defense counsel of being a professional arguer who mucks up the judicial system. Although I very much doubt that even such an accusation could fall over the line, *see United States v. Catlett,* 97 F.3d 565, 572–73 (D.C.Cir.1996), what he in fact said was:

> Remember at the beginning you took an oath that said that you will, in fact, render a verdict based solely on the evidence. And then *we—I mean the judicial system, not anybody in the courtroom—we* muck it up by allowing the professional arguers, *including myself,* to come in here and tell you what you should say, tell you what the evidence shows.... Your good judgment has gotten you where you are today. It is the good judgment that we want you to rely upon.

(Emphases added.)

Unless we are required to punish counsel for spreading calumnies about lawyers generally, *see, e.g.,* Editorial, *Hold the Humor Harmless,* L.A. DAILY NEWS, July 7, 1993, at N10 (commenting on the remarks of California Bar Association President, Harvey Saferstein, who likened lawyer-bashing jokes to hate-speech), I do not see how it can be even suggested that this statement is improper.[6]

\* \* \* \*

The majority's opinion, redolent of the "Warren Court," is clothed, presumably, in non-reviewability, since the use of silence is deemed harmless. That is most unfortunate, but I rather doubt this holding, when fol-

lowed as it must be in other cases, will be long-lived.

TATEL, Circuit Judge, concurring:

I agree that the prosecution's use of Moore's post-custodial silence violated his Fifth Amendment privilege against self-incrimination. I also agree that its use was harmless. I write separately only to emphasize that the Government's reliance on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and its progeny for the proposition that comment on Moore's silence was proper is misplaced. The *Doyle* Court did not rest its decision on the Fifth Amendment privilege, holding instead that use of a defendant's post-*Miranda* silence for impeachment purposes violates due process. 426 U.S. at 618, 96 S.Ct. at 2245. While *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), did address and reject a Fifth Amendment claim, that decision turned on the principle, first enunciated in *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), that "the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence." 447 U.S. at 235, 100 S.Ct. at 2127. Here, because Moore did not take the stand, the prosecution's reference in summation to his failure to offer exculpatory statements to police officers at the time of his arrest impermissibly penalized him for exercising his Fifth Amendment privilege.

---

**6.** I also believe the majority concedes too much to appellant's argument that the trial court should have severed his case from his co-defendant, Armstead. The nature of a motion for severance makes it unamenable to "joint" objection no matter what arguments the motion contains. *Compare* Maj. Op. at 383–84. Co-defendants in a criminal trial often have divergent interests from one another. I would, therefore, require each defendant to make his own motion for severance to the trial court.