UNITED STATES of America, Appellee,

v.

Darryl Wayne ASKEW, Appellant.

No. 94–3139.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 26, 1996.

Decided July 12, 1996.

Thomas G. Corcoran, Jr., Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant.

Mary B. McCord, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman, and Steven J. McCool, Assistant United States Attorneys, were on the brief, argued the cause for appellee.

Before: WALD, WILLIAMS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Appellant challenges his conviction for possession of more than fifty grams of cocaine base with intent to distribute, arguing that it was plain error for the trial court to admit certain expert testimony about intent, that he received ineffective assistance of counsel, and that the trial court improperly admitted as rebuttal evidence testimony regarding a prior arrest. Concluding that appellant has not shown prejudice from the admission of the expert testimony or from his counsel's performance and that the district court did not abuse its discretion in allowing the rebuttal testimony, we affirm his conviction.

## I.

Shortly after midnight, on December 6, 1993, a United States Park Police officer observed appellant Darryl Wayne Askew in the passenger seat of a car parked in front of Washington, D.C.'s Union Station. Another person entered the car and started to drive away with Askew still inside. Noticing that it had no front license plate, the police officer stopped the car. After obtaining the occupants' names and running an information check on them, the officer returned to the car to arrest Askew. Askew stepped out of the car and ran away. Several police officers eventually apprehended him, arrested him, and found in his possession 148.3 grams of cocaine base, five glass pipes, four lighters, and a pager. Askew was charged with one count of unlawful possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii).

Askew was appointed counsel, Assistant Federal Public Defender Amy Seidman. Less than a week before trial, claiming dissatisfaction with Seidman, Askew requested a different attorney. Another attorney from the Federal Public Defender Office, Assistant Federal Public Defender Michael Wallace, who had spoken with Seidman about the case, was appointed to represent Askew. Wallace reviewed the case files on a Friday evening, met with Askew and Seidman for about an hour the next day, and then left town, returning the following Wednesday, the day before trial.

Testifying at Askew's jury trial in the United States District Court for the District of Columbia, the arresting officer described the circumstances of Askew's arrest, noting that afterwards, Askew repeatedly stated that he "need[ed] a hit." The prosecution also presented an expert witness who testified that in his opinion, the amount of cocaine base found in Askew's possession was consistent with intent to distribute.

Askew's theory of defense was that he possessed the cocaine base for his personal use, not for distribution. At trial, he testified that he had been addicted to crack cocaine for four or five years. He also asserted that he had obtained the cocaine earlier on the day he was arrested from two boys who were selling drugs in an alley. According to Askew, when a police car pulled up, he snatched the drugs from the boys and ran away. Askew's fiancée testified on his behalf, stating that beginning in the summer of 1993 he began losing weight quickly, his appearance deteriorated, they stopped having sexual relations, and she noticed that money and jewelry were missing from her home.

Over the objection of Askew's counsel, the prosecution called as a rebuttal witness a New Jersey state trooper who testified that he arrested Askew in New Jersey in 1989 on

drug charges. Askew's attorney, Wallace, was unaware that these charges had been dismissed as a result of a class action alleging trooper bias. The jury was never informed that the New Jersey charges were no longer pending against Askew.

The jury convicted Askew, and the district court sentenced him to a prison term of 121 months followed by five years of supervised release. Askew later sought to have his conviction vacated pursuant to 28 U.S.C. § 2255, alleging that he had received ineffective assistance of counsel. After a hearing, the district court rejected his claims, and Askew now appeals.

### II.

Askew argues for the first time on appeal that the district court committed plain error by admitting into evidence certain statements of opinion regarding intent by the Government's expert witness. The expert, Metropolitan Police Detective Tyrone Thomas, testified that the amount of cocaine base found in Askew's possession was enough to make 1,032 individual doses and that its street value exceeded $20,000. Detective Thomas also gave his opinion that possession of this amount of cocaine was consistent with an intent to distribute rather than with personal use. He stated, "My opinion would be that anyone who possessed the equivalent of 1,032 bags of crack cocaine would be in the business of selling drugs on the streets of Washington, D.C. or wherever for a profit." He also testified, referring to a Government exhibit containing the cocaine, pipes, and lighters that had been found in Askew's possession, "I believe that the 148 grams that are inside of here was intended to be sold on the streets of Washington for a profit for a drug dealer." On cross-examination, Detective Thomas said, "[M]y opinion is that no one is going to possess the equivalent of 1,032 bags of crack cocaine for their personal use." Askew argues that this testimony violated Federal Rule of Evidence 704(b), which provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.

■ Because Askew did not object to the admission of these particular statements at trial, we review for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. The Supreme Court has explained that Rule 52(b) allows for correction of a trial error not drawn to the attention of the court if an error is shown, the error is "plain" under current law, and the error affected substantial rights. *United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). If these requirements are met, we may correct the error, but only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)) (alteration in *Olano*).

■ For the district court's admission of the challenged statements to be plain error, "it must ... have been error under settled law of the Supreme Court or this circuit" at the time of trial. *United States v. Mitchell,* 996 F.2d 419, 422 (D.C.Cir.1993). Thus, Askew cannot benefit from our holding, more than a year after his trial, that Rule 704(b) is violated when an expert gives an opinion regarding an element of the crime in response to a hypothetical question "exactly mirror[ing]" the facts of the defendant's case. *United States v. Boyd,* 55 F.3d 667, 672 (D.C.Cir.1995). Instead, Askew must rely on two cases decided prior to his trial, *Mitchell* and *United States v. Williams,* 980 F.2d 1463 (D.C.Cir.1992).

In *Williams,* the prosecutor asked an expert witness whether a certain quantity and packaging of zip-lock bags "indicate anything in [the expert's] opinion as to the *intentions* of the person who possessed those bags." *Williams,* 980 F.2d at 1465. The witness replied, "Yes, sir. These bags were meant to be distributed at street level." *Id.* In response to defense counsel's objection, the judge clarified the testimony by obtaining the officer's admissions before the jury that

the officer was "giving his opinion" and that he was not referring to and had no knowledge of the particular defendant's case. *Id.* In response to further questioning, the expert witness again testified that "these bags were intended for" "street level distribution." *Id.* On appeal, although we acknowledged that "[a]n expert's opinion that a specific defendant had the 'intentions' to distribute cocaine might be thought a determination prohibited by Rule 704(b)," we found no violation because the prosecutor's question was ambiguous—focusing on the bags, not the defendant—and because the judge intervened to clarify that the testimony referred only to a "hypothetical typical individual," not to the defendant in particular. *Id.* at 1466.

In *Mitchell*, the prosecutor asked an expert witness, "Now, what, if anything, does the packaging of that crack cocaine into nine individual ziplocks tell you about the intent of the person that was carrying those ziplocks?" *Mitchell*, 996 F.2d at 422. The witness replied, "It was intent to distribute." *Id.* We held that, absent any corrective instruction by the trial judge, this testimony, pointing more directly than the testimony in *Williams* to the mental state of "the person that was carrying those ziplocks," violated Rule 704(b). *Id.*

■ In Askew's case, Detective Thomas made one statement regarding intent that seems to fall somewhere between the facts of *Williams* and *Mitchell*: "[T]he 148 grams that are inside of here was intended to be sold on the streets of Washington for a profit for a drug dealer." As in *Williams*, the statement appears to refer more to the object possessed than to the possessor, but, as in *Mitchell*, the statement lacked a corrective interjection by the judge. Detective Thomas's statement seems, like the expert's statement in *Williams*, not to point precisely to the defendant's intent, but rather, in the words of the *Williams* court, "to answer a different question, *i.e.*, for what purpose [was the cocaine] designed?" *Williams*, 980 F.2d at 1466. We suggested in *Williams* that such a "somewhat ambiguous" response would be "troubling" absent intervention by the district court. *Id.* In Askew's case, although Detective Thomas's statement did not identify who intended to sell the drugs, the district court made no corrective interjection to ensure that the jury did not think that the prosecution's expert was testifying that Askew in particular intended to distribute the cocaine base.

Although the question is close, we agree with the Government that at the time of Askew's trial we had not clearly held that questions such as the one answered by Detective Thomas, framed so as not to refer to the intent of the actual defendant, are forbidden under Rule 704(b). Neither *Williams* nor *Mitchell* explicitly found impermissible testimony that, while linking an intent with certain contraband, did not go so far as to link intent with a specific person. Although we stated in *Williams* that such testimony would be "troubling" without a corrective interjection by the district court, *see Williams*, 980 F.2d at 1466, this expression of concern does not rise to the level of "settled law." Indeed, in *Mitchell*, where we ruled that the testimony in question violated Rule 704(b), we nevertheless concluded that "[t]he testimony ... though forbidden, was different enough from the strictures of prior cases not to have been plainly forbidden." *Mitchell*, 996 F.2d at 423. As in *Mitchell*, then, "[t]he difference may seem subtle, but Rule 704(b) invites the drawing of rather subtle lines." *Id.*

At any rate, we do not think that Askew has shown that admission of this statement "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779 (quoting *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392). Because Detective Thomas's statement of his belief that "the 148 grams that are inside of here was intended to be sold on the streets of Washington for a profit for a drug dealer" without referring to Askew in particular was in fact consistent with Askew's own testimony that he stole the cocaine from two young boys who themselves possessed the cocaine for distribution, Askew has not shown a likelihood of unfair prejudice.

■ Askew also challenges two other statements by the expert: "anyone who possessed the equivalent of 1,032 bags of crack cocaine would be in the business of selling

drugs on the streets of Washington, D.C. or wherever for a profit" and "no one is going to possess the equivalent of 1,032 bags of crack cocaine for their personal use." Askew argues that, by "categorically exclud[ing] *everyone* from intending personal use of these particular drugs, [Detective Thomas] 'pointed directly' to Askew's mental state." Reply Brief for Appellant at 12. Askew, however, cites no cases holding that Rule 704(b) renders impermissible expert testimony using categorical terms such as "anyone" or "no one."

Although we are troubled by such testimony absent corrective instruction, we need not reach the issue here, for Askew has failed to show unfair prejudice from the admission of this testimony. As the Supreme Court explained in *Olano*, Rule 52(b) assigns to "the defendant rather than the Government ... the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778. Although we have noted the powerful effect of expert testimony on an ultimate issue of fact, *see Boyd*, 55 F.3d at 672, the jury could have viewed Detective Thomas's testimony as addressing the ultimate issue of Askew's intent only by reading the words "anyone" and "no one" very literally, that is, as definitely including Askew within their scope. Furthermore, other evidence clearly supports the jury's finding that Askew intended to distribute the drugs in his possession. *Cf. United States v. Glenn*, 64 F.3d 706, 711–12 (D.C.Cir.1995) (finding no plain error when expert testimony "almost identical" to that in *Boyd* was presented "long before" *Boyd* was decided and noting as well that the defendant "was not unfairly prejudiced in view of the possession evidence which ... was itself sufficient to support the jury's inference that he intended to distribute the drugs"). Detective Thomas testified that Askew was found in possession of the equivalent of 1,032 doses of cocaine base worth over $20,000. We have held that a sufficiently large amount of drugs can be regarded as adequate evidence of an intent to distribute. *See id.* at 711 (noting that "[t]he 24.7 grams [of cocaine base] at issue 'significantly exceed[ed] that necessary for personal use' and could itself properly support an inference of intent to distribute" (quoting *United States*

*v. Stephens*, 23 F.3d 553, 557–58 (D.C.Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994)) (third alteration in *Glenn*)). In addition to knowing about the large quantity of drugs found in Askew's possession, the jury knew that Askew had five pipes, four lighters, and a pager. Under these circumstances, we cannot say that any error in admitting the expert's statements was prejudicial or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."

### III.

■ Askew also challenges the performance of his trial counsel as constitutionally ineffective on numerous grounds. To prevail on these claims, Askew must show that counsel's performance was deficient, falling below "an objective standard of reasonableness" defined by "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Askew must also show that he was prejudiced by counsel's performance, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. As the Supreme Court noted in *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. Thus, courts must make "every effort ... to eliminate the distorting effects of hindsight" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Employing these standards, the district court rejected Askew's ineffective assistance claims after the section 2255 hearing. On review, we accept the district court's findings of fact unless they are clearly erroneous. *See United States v. Del Rosario*, 902 F.2d 55, 58 (D.C.Cir.), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). Although the Supreme Court has labeled as mixed questions of law and fact whether counsel's performance was deficient and prejudicial, *see Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, that does not settle what standard of appellate review is appropriate, *compare Ornelas v. United*

*States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) (adopting *de novo* review for determinations of reasonable suspicion to conduct an investigatory stop and probable cause to make a warrantless search) *with Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401–05, 110 S.Ct. 2447, 2458–61, 110 L.Ed.2d 359 (1990) (adopting abuse of discretion standard for review of Rule 11 rulings). We need not decide here which standard of review is appropriate, for even assuming that we should review the district court's determination *de novo, cf. Nealy v. Cabana*, 764 F.2d 1173, 1176–77 (5th Cir.1985) (adopting *de novo* review), we affirm its rejection of Askew's claims.

■ Askew first argues that counsel's performance was deficient because he failed to request a continuance in order to obtain the services of an expert to testify that the amount of cocaine base found in Askew's possession could be consistent with personal use. According to Askew, because Wallace knew that the prosecution planned to call an expert witness to testify that the amount of cocaine base found in Askew's possession was consistent with an intent to distribute, Wallace should have either hired an expert to counter that testimony or asked the district court for a continuance until an expert was available to testify. At the section 2255 hearing, Askew's first attorney, Seidman, testified that she had spoken with two experts; one was not willing to say that 148.3 grams of cocaine base was consistent with personal use, and the other told Seidman that it was possible that such an amount could be consistent with personal use but that his schedule would not permit him to participate in the trial. Testifying at the section 2255 hearing, Wallace said that he contacted several experts who told him that they could not testify in good faith that someone could consume such a large amount of cocaine base. Wallace also testified that, as a tactical matter, he generally avoided using such experts because he did not think that "they give a clear indication of what . . . the mental state of the defendant is."

A special filing by Askew in this appeal demonstrates why he has not shown that counsel's failure to call an expert was uncon-

stitutionally deficient performance. In the course of moving this court for leave to hire expert witnesses and to file their affidavits on appeal, Askew sought to justify his unusual request as follows:

> [I]t appears that defense narcotic experts are not often called in this jurisdiction so it is difficult to put before the Court what they typically say. Counsel has also attempted to find such testimony in other reported opinions, which the Court could judicially notice, but has been unsuccessful.

Appellant's Reply to Opp'n to Mot. for Leave to Hire Expert Witnesses at 1. We quote from this request in light of *Strickland's* holding that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. Because Askew's request to us concedes that the sort of expert testimony on which his claim depends is infrequent in this jurisdiction and because he has pointed to no other case involving such testimony, we have no basis for concluding that Askew's trial counsel breached prevailing professional norms.

Further weakening Askew's claim is Wallace's testimony setting forth a reasonable tactical basis for his decision: his doubts about the effectiveness of expert testimony regarding intent. Indeed, in light of Askew's own testimony at trial that he stole the 148.3 grams of cocaine base from street drug dealers, Wallace may have anticipated that testimony by a government expert that 148.3 grams of cocaine base is consistent with an intent to distribute would not be especially harmful to Askew's defense. Askew has thus not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

■ Askew also bases his ineffective assistance claim on counsel's failure to prepare to rebut the testimony of the New Jersey state trooper—in particular, counsel's failure to discover that the New Jersey charges about which the trooper testified had been dropped by the time of Askew's trial. At trial, when the Government sought to introduce the

trooper's testimony as part of its case in chief, Wallace requested a thirty-day continuance, stating that he knew "absolutely nothing about" the New Jersey charge. Denying the continuance, the district court noted that the Federal Public Defender's Office had been on notice of the New Jersey arrest for four months. Because the prosecution had given only two days' notice of its intention to use the trooper's testimony, however, the district court permitted the trooper to testify only in rebuttal.

In his testimony, the New Jersey trooper described the circumstances under which he had arrested Askew nearly five years earlier. According to the trooper, as part of a narcotics investigation in New Jersey, he interviewed three suspects who had been detained in a road stop on drug charges. With their assistance, Askew was lured to a service station where he retrieved from a car a bag containing a "chunky" substance. At the section 2255 hearing, Wallace testified that he learned after Askew's conviction that the New Jersey case had been dismissed as a result of a class action alleging trooper bias. Although Askew's first attorney, Seidman, testified that she thought she knew before or during the trial that the New Jersey charges had been dropped, the district court thought "[h]er testimony was not very confident on that point."

Askew first attempts to satisfy the prejudice prong of *Strickland* by arguing that had counsel discovered that the New Jersey charges had been dismissed, the district court would have had to exclude the officer's testimony. We disagree. Askew has offered no reason to think that his arrest was based on an improper search of his property or that the officer in his case lacked probable cause to arrest him. Regardless of whether probable cause supported the initial road stop that resulted in the arrest of the three suspects who eventually lured Askew to the service station, Askew has given us no reason to doubt that the three suspects' statements to the trooper that they were transporting cocaine for Askew, combined with Askew's retrieval of the bag containing the chunky substance from a car, were sufficient to establish probable cause to arrest him.

Notwithstanding the likely admissibility of the trooper's testimony, Askew may still satisfy *Strickland*'s prejudice prong by demonstrating a reasonable probability either that, had the jury known that the charges had been dropped for trooper bias, it would have discounted the trooper's testimony and determined that the prosecution had not shown beyond a reasonable doubt that Askew had the intent to distribute the cocaine base in his possession, or that, had the district court known, it would not have admitted the trooper's testimony as rebuttal evidence and the jury might not have convicted Askew. We think Askew's showing is not sufficient for either of these purposes.

Askew concedes that he "do[es] not know what Wallace would have found if he had investigated the New Jersey case." Brief for Appellant at 26. The only relevant evidence in the record indicates simply that the case against Askew had been dismissed as part of a class action alleging trooper bias. Askew's suggestions in his brief that the bias at issue was racial and that bias was present in his case in particular are unsupported by any record evidence. The most that the record shows is that his case was dismissed as part of a class action alleging bias on the part of troopers whose identities we do not know against plaintiffs whose identities we likewise do not know. If further investigation by Askew's trial counsel would have shown that the very trooper who arrested Askew was racially motivated, Askew would have a powerful argument for *Strickland* prejudice. But further investigation might instead have shown simply that, in order to settle a large class action involving other officers, New Jersey officials agreed to drop an entire class of minor drug charges regardless of who the arresting officers were. If this latter reason were the basis for dropping the charges against Askew, then the district court might have admitted the trooper's testimony, and the jury might have felt no need to discount it. Without more information about why the New Jersey charges were dropped, we cannot say that Askew has demonstrated a reasonable probability that further investigation by his attorney would have resulted in an acquittal.

In so ruling, we agree with the Seventh Circuit that to show prejudice, a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make

> "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result."

*Sullivan v. Fairman,* 819 F.2d 1382, 1392 (7th Cir.1987) (quoting *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987)). This approach is fair to defendants and is sensible from an institutional perspective. When a convicted defendant seeks to overturn a jury verdict based on inadequate investigation by counsel, courts should insist that the defendant show to the extent possible precisely what information would have been discovered through further investigation. Any other rule would give defendants an incentive to present as little evidence as is necessary to create some doubt, even when disclosure of more facts would make clear that further investigation by trial counsel would not have created a reasonable probability of a different outcome. Although defendants are entitled to the benefit of reasonable doubt at trial, an appellate court should not overturn a conviction simply because the defendant has teasingly suggested that there may be facts out there that his trial counsel could have discovered and that would have helped his case. If any such facts exist, the defendant must identify them. Askew has failed to do so. Even with highly skilled counsel in this court, Askew has revealed only scant information regarding the dismissal of the New Jersey case against him. The little he has told us is not enough to convince us that there is a reasonable probability that had the jury known it, the jury would have reached a different result, particularly in light of other evidence, including the amount of cocaine base and the drug paraphernalia found in Askew's possession. We cannot speculate about the impact on the jury of what Askew has not told us.

Because we find that Askew has not demonstrated prejudice by virtue of counsel's failure to discover that the New Jersey charges were dropped, we need not determine whether the performance of his counsel was deficient. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70. Nevertheless, we note that the troubling problem this case presents is one that can be easily avoided in future cases either by defense counsel or by prosecutors who choose to present testimony regarding prior arrests. As the Government itself suggested at oral argument, a simple phone call to the appropriate New Jersey court by counsel for either party would likely have revealed that the charges had been dropped.

At his section 2255 hearing, Askew offered several other arguments as to why he received ineffective assistance of counsel at trial. We are unconvinced by each. Askew's assertion that Wallace did not spend enough time on his case does not in and of itself establish prejudice without some showing of how more time spent on his case might have influenced the outcome of the trial. Askew's claim that Wallace's failure to introduce into evidence a photograph showing Askew's weight loss due to drug use does not rise to the level of deficient or prejudicial performance in light of other evidence at trial of Askew's drug use, including his own testimony, his fiancée's testimony, and the arresting officer's testimony.

Finally, Askew now points for the first time to several other alleged instances of ineffective assistance. Because Askew failed to raise these claims in his section 2255 hearing, we deem them waived for purposes of this proceeding unless "the trial record alone conclusively shows that the defendant is entitled to no relief" or, to the contrary, that the defendant is entitled to relief. *United States v. Fennell,* 53 F.3d 1296, 1303–04 (D.C.Cir.1995), *on reh'g,* 77 F.3d 510 (1996). On the basis of the trial record alone, we can conclude that Wallace's failure to object to the statements of Detective Thomas did not amount to deficient performance. As we indicated above, at least one of the challenged statements was not clearly forbidden by then-existing case law, and the other two

present close questions. Furthermore, demonstrating his familiarity with this circuit's cases construing Rule 704(b), Wallace made several objections to Detective Thomas's testimony on intent. We thus have no doubt that Wallace's performance was objectively reasonable under prevailing professional norms.

■ We cannot evaluate Askew's remaining claims on the basis of the trial transcripts alone, for further inquiry into factual matters or potential tactical choices is necessary for each. For example, Askew points to Wallace's failure to object to the New Jersey trooper's reference to "contraband." But this may have involved a tactical choice; Wallace may have decided not to object to the New Jersey trooper's use of the term "contraband" because, having already objected to the trooper's use of the term "cocaine," he wished not to draw any more attention to the issue. Nor can we judge from the trial record alone Askew's claim that Wallace should have asked the district court to exclude any amount of cocaine base that Askew intended for personal use from the amount of cocaine used to calculate his sentence. The record does not indicate what portion of the cocaine base, if any, Askew intended to devote to personal use. Finally, although Askew argues that Wallace misunderstood the personal use defense, we cannot assess counsel's comprehension of the defense on the basis of the trial record alone. Following our practice in *Fennell*, "we deem [these ineffective assistance claims] waived for purposes of this proceeding and will not remand." *Id.* at 1304.

## IV.

■ We turn finally to Askew's argument that we should reverse his conviction because the trial court improperly admitted as rebuttal evidence the New Jersey trooper's testimony regarding Askew's 1989 arrest on drug charges. According to Askew, the trooper's testimony was not relevant because it did not constitute rebuttal evidence. In his brief, Askew points out that, because the district court made its decision to admit the evidence in chambers without transcription, we do not know the precise evidence that the prosecu-

tion expected the New Jersey trooper's testimony to rebut. Askew speculates that the only evidence it could have rebutted was his testimony that the cocaine base was for his own personal use. He then argues that because the trooper was not competent to testify that the substance allegedly being transported for Askew in the New Jersey case was cocaine—indeed, the district court struck from the record the trooper's reference to "cocaine"—the trooper's testimony about Askew's connection five years earlier with a chunky substance similar in appearance to the cocaine base he possessed in the present case could not rebut Askew's claim that he had no intent to distribute that cocaine base. According to the Government, by claiming that he obtained the cocaine base by snatching it from two young boys, Askew implicitly denied his involvement in drug trafficking; because evidence showing that Askew had formerly been arrested for picking up a container with a large quantity of a substance that looked like cocaine rebuts this implicit denial, it is relevant to Askew's intent to distribute the cocaine base.

■ Federal Rule of Evidence 402 states that "[a]ll relevant evidence is admissible, except as otherwise provided." Rule 401 explains that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We normally review a district court's relevance determinations for abuse of discretion. *See Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 2911–12, 41 L.Ed.2d 590 (1974); *United States v. Carter,* 522 F.2d 666, 685 (D.C.Cir.1975). The Government argues for stricter review under the plain error standard on the ground that Askew's counsel objected to the rebuttal evidence based only on lack of notice, not because it was improper rebuttal evidence.

Askew's claim fails under either standard. Because five years had passed and because the trooper was not competent to testify as to whether the substance for which Askew was arrested in New Jersey was in fact cocaine, the trooper's testimony was, as the district court noted, "thready or thin" and

"[n]ot the strongest available testimony." Nevertheless, a jury could make reasonable inferences from the trooper's testimony that would make Askew's denial of involvement in drug trafficking less likely. The district court thus did not abuse its discretion or commit plain error in admitting the trooper's testimony as rebuttal evidence.

We affirm Askew's conviction.

*So ordered.*