**UNITED STATES of America, Appellee,**

v.

**Winston Delano WEAVER, Appellant.**

**No. 99–3063.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 2000.

Decided Dec. 15, 2000.

---

Ed Wilhite, appointed by the court, argued the cause and filed the brief for appellant.

Ryan H. Rainey, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys. Mary-Patrice Brown, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Winston Delano Weaver appeals the denial of his motion under 28 U.S.C. § 2255 to vacate his conviction because of ineffective assistance of counsel in failing to obtain information about the three suicide attempts of a government witness.[1] He contends that the district court erred in denying his motion without an evidentiary hearing to determine the significance of the attempts and why they had not been ascertained or disclosed prior to trial. Assuming that trial counsel's performance was deficient, we hold that, given the relative unimportance of the witness to Weaver's conviction, the degree to which the witness was impeached, and the strength of the government's other evidence, Weaver has failed to show the requisite prejudice. Accordingly, we affirm.

---

1. The district court certified this issue for appeal by Order of November 10, 1999. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified at 28 U.S.C. § 2253(c)(1)(B) (1996)).

## I.

The government introduced evidence at Weaver's trial to show that on four separate occasions he supplied quantities of cocaine to an undercover officer of the Metropolitan Police Department. That evidence showed that Weaver supplied the drugs in response to arrangements made by Antonio "Hub" Johnson, who was a government informant working with Officer Dale Sutherland.

The first sale occurred on November 14, 1991. Sutherland had told Johnson to contact Weaver. Johnson did so and informed Weaver that Sutherland wanted to buy three ounces of powder cocaine for $3000. That evening, the three men met. While Sutherland waited in his truck, Johnson accompanied Weaver into a restaurant (near the intersection of 18th Street and Columbia Road, N.W.) where Weaver retrieved a bag containing powder cocaine. Weaver and Johnson returned to Sutherland's truck, Johnson showed the cocaine to Sutherland, and the three men then left the area. The second sale occurred on November 21, 1991. Johnson again asked Weaver to sell Sutherland powder cocaine, this time four-and-a-half ounces for $3500. The three men met that afternoon (at the corner of Benning Road and H and Florida Streets, N.E.) and Johnson accompanied Weaver to a pay phone nearby, where Weaver telephoned the cocaine supplier. The supplier stated that he would be ready to make the exchange in an hour, so the three men reconvened then at the corner of 18th Street and Columbia Road, N.W., where the first

exchange had taken place. Weaver retrieved the drugs from the same place as he had before and gave the drugs to Johnson, who delivered them to Sutherland. Weaver and Sutherland agreed to continue to do business together. The third sale occurred on December 18, 1991, when Weaver retrieved, again from the same area, two ounces of powder cocaine for Johnson to deliver to Sutherland for $2200.

Weaver was arrested on December 30, 1991 in connection with a planned fourth undercover sale, which was to take place in a shopping center parking lot. On this date, Sutherland negotiated with Weaver, again through Johnson, for the purchase of eighteen ounces of powder cocaine; the telephonic negotiations were recorded.[2] A video camera recorded parts of the transaction, and several undercover police officers were positioned in the parking lot for the surveillance operation.

Before going to the shopping center, Johnson drove Weaver to a parking lot (near 46th Street and Fletcher Johnson High School in Southeast) where Weaver saw his supplier, Gregory Barnes, in a car with George Denny. Weaver left Johnson's car and spoke to Barnes. At the same time, Denny got out of Barnes' car and into the back seat of Johnson's car. Johnson then drove Weaver and Denny to the Fairfax Village parking lot, with Barnes following in his car. On the way, Denny showed Johnson some of the cocaine. After the men arrived in the shopping center parking lot, Sutherland and Weaver argued about whether Sutherland would pay first or Weaver would produce

---

**2.** In the first telephone call, Johnson asked Weaver if he could get half a kilo and an additional two-and-a-half ounces of cocaine; Weaver said he would try. At Sutherland's direction, Johnson told Weaver that he had given Sutherland some of his own money for the cocaine and, hence, wanted to remain involved in transactions between Weaver and Sutherland. In a second telephone call, Weaver suggested that the three men meet at his house, but Johnson refused, expressing concern over robberies of drug buyers. In a third telephone call, Sutherland spoke direct-

ly to Weaver, who assured Sutherland that he would find a safe place to make the exchange; Weaver said he would talk to his supplier about making the exchange at a local hotel. In the fourth telephone conversation, the three men agreed to meet in a shopping center parking lot at the intersection of Alabama and Pennsylvania Avenues, S.E. Although there were no negotiations as to the purchase price for the eighteen ounces of powder cocaine at the December 30th sale, Officer Sutherland testified that he "had assumed [the price] would be about $14,000."

the drugs first. As soon as Sutherland agreed to produce the money before receiving the drugs, he opened the hatch of his jeep to get the money, and the arrest teams, by prearranged signal, moved in to make the arrests. When Weaver appeared to be getting away, Sutherland revealed that he was a police officer and placed Weaver under arrest.

Weaver and Barnes were indicted on four counts in connection with the events of December 30, 1991.[3] At their consolidated trial, the government called Johnson, Sutherland, and Denny, among others, as witnesses to testify against Weaver and Barnes. As relevant to this appeal, Denny testified that he sold drugs for Barnes, and that on December 30th, he gave Weaver drugs that Barnes, not Johnson, supplied him. Weaver testified in his own defense, claiming that although he had used cocaine for at least twenty years, he had never before sold it, and that on the four dates in question, he was paying off a debt to Johnson, who had at one point sold drugs to Weaver on credit. Weaver had not wanted to sell drugs, but Johnson told him that Sutherland was "excited about the purchase." Johnson even coached Weaver on how to act like a drug dealer. When Weaver tried to back out of the December 30th sale, Johnson struck him across the face with a pistol, chipping Weaver's tooth. Weaver testified that he had never before met Barnes and did not know who he was. Weaver also presented a witness who testified that Johnson was selling drugs during the time that he was working with the police. On April 21, 1992, a jury convicted Weaver on all counts; a mistrial was declared as to Barnes.

Two years after his conviction was affirmed on appeal, see *United States v. Weaver*, 55 F.3d 685, 1995 WL 310023 (D.C.Cir.1995), Weaver filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground of ineffective assistance of counsel. As relevant here, Weaver alleged that trial counsel had failed to obtain information that was available about Denny's three suicide attempts in the D.C. Jail.[4] Weaver argued in his motion that although Denny was a "scoundrel" and a "hyperfallacious perjuror," trial counsel failed to impeach him, despite the fact that Denny's suicide attempts raised questions about his "competency as a witness." Weaver argued later, through counsel, that the suicide evidence was "probative of the ends to which Mr. Denny would go to get out of jail."

The district court denied the motion without a hearing. Relying on *United States v. Smith*, 77 F.3d 511, 516 (D.C.Cir. 1996), for the proposition that "only a mental disorder that would potentially impair a witness' ability or willingness to tell the truth is enough to make a witness incompetent and, consequently, a trial unfair," the district court found that neither Denny's suicide attempts nor any prior mental history indicated that he suffered from a mental illness that would prevent him from

---

3. Weaver and Barnes were indicted for conspiracy to distribute more than fifty grams of a mixture containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 841(b)(1)(C); two counts of attempted distribution of a mixture containing cocaine base within 1000 feet of a school zone, in violation of 21 U.S.C. §§ 846, 860(a) and 18 U.S.C. § 2; and unlawful use of a communication facility to facilitate the attempted distribution of a mixture containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 843(b). In addition, on May 28, 1992, Weaver was indicted on seven counts in connection with his drug distributions on November 14 and 21, and December

18, 1991. Weaver's appeals from his convictions were consolidated by the court.

4. In his *pro se* motion, Weaver also raised claims of prosecutorial misconduct and prosecutorial vindictiveness. In reply to the government's opposition, Weaver claimed that he was entitled to relief not only because trial counsel failed to obtain information about Denny's three suicide attempts, but also because trial counsel failed to seek production of evidence regarding Denny's ownership of a safe, to impeach Denny for visitation with his fiancee, and to contact a witness who would have testified that Johnson was selling drugs while working for the government.

testifying truthfully. Furthermore, the court found that Denny had been "extensively cross-examined" and that "his competency to serve as a witness was satisfactory."

## II.

On appeal, Weaver contends that "[i]n the context of multiple allegations as to the ineffectiveness of [trial] counsel and prosecutorial misconduct and the apparent multiple suicide attempts by a key government witness George Denny, the [district c]ourt [ ] was obligated to conduct a hearing regarding the significance of the attempts and why they had not been ascertained and/or disclosed *prior* to trial." Weaver maintains that it is "logically impossible to determine the possible impact of a mental illness upon testimony without knowing what the illness might be," and that Denny's suicide attempts are "indicative of the desperation of a witness to escape punishment." Continuing, Weaver maintains that "[a] distinction should be made between the suicide attempts and the underlying psychiatric disorder they might indicate." Finally, he notes that the district court stated in its certification of appealability that he had made "a substantial showing that he was denied his constitutional right to counsel by the alleged ineffectiveness of counsel in failing to obtain information regarding Mr. Denny's three suicide attempts."

Under *Strickland,* Weaver must demonstrate both that trial counsel's performance was deficient or unreasonable under the circumstances, and that the deficient performance prejudiced the defendant such that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). A reasonable probability is "a probability sufficient to undermine confidence in the out-

come." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In *Strickland,* the Court labeled relevant findings regarding the performance and prejudice prongs as mixed questions of law and fact, *see id.* at 698, ·104 S.Ct. 2052; however, "that does not settle what standard of appellate review is appropriate." *United States v. Askew,* 88 F.3d 1065, 1070 (D.C.Cir.1996). Normally, the court's review of the district court's findings of fact is "highly deferential," such that the district court's findings will be reversed only if they are "clearly erroneous," *United States v. Del Rosario,* 902 F.2d 55, 58 (D.C.Cir.1990) (citing *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052 and FED.R.CIV.P. 52(a)); *see also Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), while review of the district court's legal conclusions is *de novo. See id.; United States v. Ahn,* 231 F.3d 26 (D.C.Cir.2000) (citing *United States v. Pollard,* 959 F.2d 1011, 1023 (D.C.Cir.1992)). We need not decide which standard is appropriate because even on *de novo* review we find no error. *See Askew,* 88 F.3d at 1071.

■ Section 2255 provides that hearings shall be granted "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the "alleged deficiencies of counsel did not prejudice the defendant." *United States v. Sayan,* 968 F.2d 55, 66 (D.C.Cir.1992) (citing *United States v. Patterson,* 652 F.2d 1046, 1047–48 (D.C.Cir.1981)).

■ The ultimate question is whether, despite the fact that the evidence presenting Denny's suicide attempts was not presented to the jury, Weaver received a fair trial, that is "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Our disposition of Weaver's contention that a hearing was

required might be different if, as Weaver asserts on appeal, Denny had been a "key government witness" against him. Then, because the nature and significance of Denny's suicide attempts is not a matter of record, a hearing might have been in order. Further, because it is also unclear in the record when information about the suicide attempts became available to the government and defense counsel, the matter might need to have been explored at a hearing. These issues might need to have been explored if Denny had been a key witness against Weaver because cross-examination regarding the extent of Denny's willingness to exculpate Johnson might have demonstrated Denny's lack of credibility to a greater extent than the defense attacks on his credibility that the jury, in fact, heard. If Denny had been a key witness inculpating Weaver, and the government's evidence was otherwise weak, the jury's evaluation of Weaver's coercion defense could have been affected.

■ In contending that the district court abused its discretion in summarily denying his motion, Weaver, however, faces a series of hurdles. As to the performance prong of *Strickland,* the government notes, the district court found, and this court has recognized, attempted suicide by itself does not render a witness' testimony less credible. *See United States v. Brooks,* 966 F.2d 1500, 1503 (D.C.Cir.

1992). Weaver has not proffered any evidence suggesting that Denny was incompetent, much less that Denny could have been impeached by information relating to his suicide attempts.[5] Under the circumstances, having failed to proffer a basis to show that counsel's performance was deficient, the district court was not required to hold an evidentiary hearing. *See Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *United States v. Green,* 680 F.2d 183, 184, 189 (D.C.Cir.1982). But assuming Weaver has met the performance prong of *Strickland,* by showing that information about Denny's suicide attempts was available for trial counsel to discover and could have been used to impeach Denny's testimony by showing that he was so desperate not to testify against Johnson that he would do and say anything to stay out of jail, Weaver must still demonstrate a "reasonable probability" that the outcome of his trial would have been different.[6] *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ At the outset, Weaver's attempt to show prejudice as a result of the cumulative effect of alleged errors by trial counsel and the district court is an attempt to circumvent the provisions of the Antiterrorism and Effective Death Penalty Act,[7] and this he knows he cannot do. *See United States v. Winston Delano Weaver,* 195 F.3d 52, 53 (D.C.Cir.1999). Because

5. At oral argument, the government advised that during a later trial, Denny asserted a privilege with respect to the disclosure of evidence of his suicide attempts; the district court upheld the privilege. Apparently, the defense did not challenge the assertion of the privilege. In *Smith,* the court noted both that "evidence regarding mental illness is relevant only when it may reasonably cast doubt on the ability or willingness of a witness to tell the truth," and that "[f]ederal courts often permit cross-examination regarding a witness' previous mental history, and may even allow extrinsic evidence such as hospital records to be used for impeachment purposes," provided there is a sufficient temporal nexus. 77 F.3d at 516.

6. The district court found that the government disclosed Denny's suicide attempts on

May 12, 1992 (after the jury returned its verdict in Weaver's trial). Weaver points to no evidence that would have alerted defense counsel to Denny's suicide attempts before then.

7. The Antiterrorism and Effective Death Penalty Act requires a defendant to obtain a certificate of appealability from the district court in order to pursue an appeal, *see* 28 U.S.C. § 2253(c)(1)(B), and provides that "[t]he certificate of appealability ... shall indicate which *specific* issue or issues satisfy the showing required by paragraph (2)." *Id.* § 2253(c)(3) (emphasis added). Paragraph (2) provides that a certificate of appealability may be issued only if the defendant makes a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

Weaver did not appeal the district court's certification, only his allegation regarding trial counsel's failure to learn of Denny's suicide attempts is properly before the court. *See id.*

Additionally, characterizing Denny as a "key government witness" against Weaver both misstates the nature of Denny's role at Weaver's trial and ignores the key eyewitness testimony against Weaver by informant Johnson and undercover officer Sutherland, as well as the December 30th video and telephonic recordings.[8] Denny's testimony was, at most, cumulative with respect to Weaver. Moreover, Weaver's attempt to distinguish *United States v. Moore,* 104 F.3d 377 (D.C.Cir.1997), is unpersuasive. In *Moore,* the court rejected the defendant's claim of ineffective assistance of trial counsel because "[e]ven had [trial counsel] located the[ ] [missing] witnesses, the testimony they allegedly would have provided was tangential at best," and in light of the strong evidence against the defendant, any error by counsel would have been harmless. *Id.* at 391. Similarly here, the strength of the government's evidence against Weaver would remain virtually unchanged had Denny never testified.

To the extent that Denny's suicide attempts could have further impeached his testimony, the district court could properly conclude that the extensive cross-examination of Denny provided the jury with strong grounds to doubt his credibility. Not only was Denny cross-examined about his own past drug-selling activities, his possession of weapons, his assaultive conduct against his girlfriend, and his false statements about his prior criminal conduct to authorities, including the trial judge and his probation officer, but the jury also learned about his agreement to cooperate with the government. In closing argument, trial counsel continued to attack the credibility of the government's witnesses, arguing that both Johnson's and Denny's necks were on the line and that they were trying to "work[ ] a beef off for the police, and would say anything to Mr. Weaver and do anything to get Mr. Weaver involved in this transaction."

Because Denny played an insubstantial role with regard to the evidence against Weaver, the district court properly ruled that Weaver had failed to meet his burden of showing prejudice under *Strickland,* and that the verdict was "worthy of confidence."[9] *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555. Accordingly, because Weaver fails to show that the district court abused its discretion in denying his § 2255 motion without an evidentiary hearing, we affirm the order denying the motion.

---

8. Even if, as Weaver's counsel argued in closing argument at trial, the tape recordings were not entirely clear, transcriptions were made available to the jury. In any event, the recordings provided some corroboration of the eyewitness' testimony against Weaver. *See supra* n. 2.

9. Weaver's contention that the district court may have failed to apply the correct prejudice standard is patently meritless. In its memorandum opinion, the district court set forth *Strickland*'s two-pronged test and concluded, upon reviewing Weaver's allegations, that "[trial c]ounsel's performance was not deficient and did not prejudice [Weaver's] presentation to the jury." *See, e.g., Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).