# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 20, 2006          Decided March 30, 2007

No. 02-3104

UNITED STATES OF AMERICA,
APPELLEE

v.

BENJAMIN GWYN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00073-01)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, *Thomas J. Tourish, Jr.*, *James Sweeney*, and *Sarah T. Chasson*, Assistant U.S. Attorneys.

Before: SENTELLE and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

TATEL, *Circuit Judge*: Arguing that his trial lawyer provided constitutionally ineffective assistance, appellant appealed his conviction for illegal firearm possession by a convicted felon. After we remanded the record, the district court determined that although counsel's performance was "less than stellar," it was not constitutionally deficient. Here, appellant challenges that conclusion, asserting that trial counsel failed to (1) make the best available argument at the suppression hearing, (2) argue that the police planted the firearm or that the gun introduced at trial was not the gun allegedly seized from him, and (3) conduct a reasonable investigation. He also argues that counsel presented a legally untenable defense. Because we agree with the district court that trial counsel's performance was not constitutionally ineffective, we affirm the conviction.

**I.**

Metropolitan Police Department (MPD) Officers Timothy Lewis and Leslie Parsons, Jr., observing an inoperable headlight on appellant Benjamin Gwyn's vehicle, stopped the car early in the morning of February 4, 2001. Officer Lewis approached the car and motioned Gwyn to lower his window. Gwyn instead opened the door, explaining that the window was broken. Lewis asked for Gwyn's driver's license and, as Gwyn produced it, noticed he appeared nervous, his hands "constantly reaching up towards the steering wheel." Tr. of Nov. 5, 2001 Hr'g at 17. Officer Lewis asked Gwyn to step out of the car and observed that Gwyn was tall, well over six feet. The officer also saw a black leather jacket and black scarf in the vehicle and remembered that at evening roll call, a detective had instructed the officers to be on the lookout for an armed robber over six feet tall with a black leather jacket and a ski mask or black scarf. Suspicious, Lewis patted Gwyn down, feeling what he thought was a firearm in his pants pocket. Asked by Lewis what was in

the pocket, Gwyn said it was a pistol he had taken from his aunt's home.  The officers then placed Gwyn under arrest.

At Gwyn's detention hearing, Officer Parsons testified that the gun they recovered was a "Grendell [sic] P-10, 38 caliber." Tr. of Feb. 16, 2001 Hr'g at 8.  Parsons also testified that when MPD firearms specialists tested the gun, they found that it "did not fire, due to a light strike of the hammer," meaning, Parsons explained, that the gun's firing mechanism was unable to cause the necessary "chemical reaction to make the projectile go from the round."  *Id.*

Because Gwyn had been convicted of a crime punishable by more than a year's imprisonment, a grand jury indicted him on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  In particular, the indictment alleged that Gwyn had possessed a "Grendel .380 caliber semi-automatic pistol"—not a 38 caliber.

Gwyn was initially represented by a federal defender who moved to suppress the gun on the grounds that the search violated the Fourth Amendment.  Alleging that the police had failed to Mirandize Gwyn, the defender also asked the court to suppress the statements he made to the officers.  At the hearing, however, Gwyn was represented by new counsel—the subject of these proceedings.  The new lawyer argued that the officers had no legitimate reason to order Gwyn from his vehicle or to frisk him.  But believing that Gwyn had not been in custody when he spoke to the officers, counsel abandoned the *Miranda* argument made by the federal defender.  Tr. of Nov. 5, 2001 Hr'g at 59 ("I have conceded and will continue to concede that he was at that moment in time not in custody.").  After prodding from the court, however, counsel recanted his concession and sought suppression of Gwyn's statement that he had taken the gun from his aunt's home.  Although the district court rejected

Gwyn's Fourth Amendment argument, it accepted the *Miranda* point and suppressed Gwyn's second statement.

After the suppression hearing but before trial, bad feelings between Gwyn and his lawyer bubbled to the surface. Gwyn asked the court to appoint new counsel, asserting that his lawyer had failed to investigate the case. In particular, concerned that the officers were biased against him, Gwyn cited the lawyer's failure to investigate whether the police officers had done a background check on him weeks before the arrest. In response, the lawyer offered his view that "prior involvement between Mr. Gwyn and officers . . . is not relevant to the factual issues of this case." Tr. of Nov. 5, 2001 Hr'g at 72. Concluding that the lawyer had acted reasonably, the district court declined to appoint new counsel.

At trial, Officer Lewis testified that the weapon seized from Gwyn was a Grendel .380 semi-automatic and identified the firearm in the courtroom as Gwyn's. Officer Parsons testified, as he had at the suppression hearing, that the gun was inoperable "due to a light strike of the hammer." Nov. 6, 2001 Trial Tr. at 174. Defense counsel never asked Parsons about the discrepancy between his statement at the detention hearing that the gun was a "38" caliber and Lewis's trial testimony, corroborated by the police reports, that it was in fact a ".380" caliber. The government called a Bureau of Alcohol, Tobacco and Firearms special agent, who testified that despite its inoperability, the weapon qualified as a "firearm" as defined in the United States Code, a legal conclusion to which trial counsel objected. The special agent also testified that the gun bore a serial number, as well as the scratched-in initials of an arresting officer (Parsons) and a firearms specialist.

After the government rested, defense counsel again informed the court that he and Gwyn disagreed about how to

proceed, this time over whether to recall the MPD officers to inquire further into the circumstances of the initial stop. Gwyn offered a lengthy and difficult-to-follow theory of how, given the layout of the streets in the area, the officers must have lied about the stop. The court rejected Gwyn's complaints, explaining that strategic decisions such as whether to call a witness belong to the attorney. Counsel moved for a judgment of acquittal, though he made no significant argument for it. He put on no evidence and, following a perfunctory closing argument in which he urged acquittal on grounds that the gun was inoperable, the jury convicted Gwyn.

Gwyn then filed several pro se motions alleging, among other things, that trial counsel had provided constitutionally ineffective assistance. Subsequently withdrawing these motions, Gwyn presented his ineffective assistance argument to this court. Pursuant to this circuit's practice, *see United States v. Fennell*, 53 F.3d 1296, 1304 (D.C. Cir. 1995) ("When an appellant has not raised a claim of ineffective assistance of counsel before the district court, . . . our general practice is to remand the claim for an evidentiary hearing."), we remanded the record to the district court to consider the ineffective assistance issue in the first instance. *United States v. Gwyn*, No. 02-3104, 2004 WL 885274 (D.C. Cir. April 26, 2004).

On remand, the district court conducted an evidentiary hearing, taking testimony from both Gwyn and trial counsel. Once again represented by a federal defender, Gwyn testified that, prior to trial, he not only informed trial counsel that he had no gun when he was arrested, but also asked his lawyer to investigate whether the police planted the weapon. He further testified that the gun introduced into evidence was not the gun allegedly taken from him at the scene, citing the fact that the gun presented at trial bore a serial number while the one allegedly seized did not. Relying on his notes, trial counsel testified that

he was unaware of Gwyn's claim that he possessed no weapon at the time of his arrest or of Gwyn's belief that the police had planted the gun. Trial counsel also testified—inaccurately—that he had raised the serial number discrepancy at trial. Following this testimony, the federal defender argued that trial counsel should have stressed inconsistencies between Gwyn's appearance and the police reports' descriptions of the robbery suspects. The federal defender also argued that trial counsel had presented a legally untenable defense.

The district court declined to credit Gwyn's testimony, accepting instead trial counsel's version of his discussions with his client. The court gave three reasons for its credibility determination: Gwyn's self-interest in the issue, the lack of any hint in Gwyn's copious notes to his lawyer that the police had planted the gun, and the court's own recollection that none of Gwyn's complaints about counsel related to a "plant" theory. The court also noted that Gwyn had raised several other alleged lapses in trial counsel's performance and ruled that none could have affected the outcome. Gwyn appeals.

## II.

Ineffective assistance of counsel claims are governed by the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). As we have restated the *Strickland* test, to succeed, a defendant "must prove (1) [his attorney] made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Moore*, 394 F.3d 925, 931 (D.C. Cir. 2005) (internal quotation marks omitted). The *Strickland* test's first element requires a defendant to "show that counsel's performance was deficient, falling below an objective standard of reasonableness

defined by prevailing professional norms." *United States v. Askew*, 88 F.3d 1065, 1070 (D.C. Cir. 1996) (internal quotation marks omitted). As to the second element, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moore*, 394 F.3d at 931 (internal quotation marks omitted).

Although other circuits review ineffectiveness of counsel rulings de novo, as we explained in *United States v. Toms*, 396 F.3d 427 (D.C. Cir. 2005), this circuit has yet to decide between de novo and abuse of discretion review. In *Toms*, we declined to fix the standard in part because it was "unnecessary for us to do so," given that the defendant's challenge "fail[ed] even under the more searching *de novo* standard." *Id.* at 433; *see also Askew*, 88 F.3d at 1071. So too here. Because Gwyn's ineffective assistance claim fails regardless of the standard of review, we again leave the unsettled question for another day. We review the district court's factual conclusions only for clear error. *Askew*, 88 F.3d at 1070.

Gwyn first argues that counsel performed ineffectively because he failed to challenge the frisk that led Officer Lewis to find the gun. Lewis testified that at roll call, he heard a detective describe an armed robbery suspect as a "black male over six foot [sic] tall with a black leather jacket and either a ski mask or a black scarf over his face." Tr. of Nov. 5, 2001 Hr'g at 15. Yet police reports provided to counsel, though describing the robbers as black males, said they were 6', 5'8", and 5'10", and made no mention of a leather jacket. Because "there was no match except in terms of Gwyn's race and gender and, perhaps, his possession of a black knit scarf," Gwyn argues, there was "no reasonable suspicion to believe that Gwyn might be one of the armed-and-dangerous robbers that the police were looking for." Appellant's Br. 28. The government responds that because the officers relied on the description provided by the

detective, not the police reports, "appellant cannot show that [counsel] was deficient in not cross-examining Lewis about the reports or that he suffered any prejudice for want of such cross-examination." Appellee's Br. 30.

The government's argument is persuasive. Because no record evidence indicates that the arresting officers ever saw the police reports, cross-examination of the officers based on those reports would have been useless as impeachment and highly unlikely to bear on the district court's suppression decision. Moreover, the officers, relying on the detective's description, had reasonable suspicion to frisk Gwyn. While a diligent defense attorney might nonetheless have pointed out the discrepancy between the police reports and the detective's description, Gwyn has given us no basis for believing that trial counsel's performance "[fell] below an objective standard of reasonableness defined by prevailing professional norms." *Askew*, 88 F.3d at 1070.

Gwyn next argues that trial counsel omitted two meritorious arguments relating to the gun itself: "[t]hat a gun was planted on Mr. Gwyn, and that the gun produced at trial was not the gun the officers alleged they took from Gwyn." Appellant's Br. 28-29. The first argument is a non-starter. As noted above, the district court, after hearing testimony from both Gwyn and trial counsel, concluded that Gwyn never informed the lawyer of this theory either before or during trial. Gwyn offers us no reason to believe that this finding was erroneous, much less clearly so.

Gwyn's "different gun" theory—that the gun presented to the jury was not the gun allegedly seized from him—fares no better. Seeing "significant and glaring inconsistencies between the first descriptions of the gun and the gun produced at trial," Appellant's Br. 29, Gwyn argues that had trial counsel brought these inconsistencies to the jury's attention, "there is a

reasonable probability that [the jury] would have had a reasonable doubt about whether Mr. Gwyn truly had a gun that night and whether the gun produced in court was the same gun they claimed to have seized from Mr. Gwyn." Appellant's Br. 31. In support of this claim, Gwyn cites two inconsistencies, neither exploited by his counsel. First, Officer Parsons testified at the suppression hearing that the gun was a "38" caliber, yet police reports and other testimony indicated it was a ".380" caliber. Second, initial police reports recorded no serial number on the gun, yet later reports did. Because, as we explain below, Gwyn suffered no prejudice from trial counsel's failure to exploit these inconsistencies, we need not decide whether counsel's performance in this respect was objectively unreasonable. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

As to the first point, Gwyn has introduced no evidence demonstrating any difference between a "38" caliber gun and a ".380" caliber gun, and we doubt that one exists. There is thus no "reasonable probability" that, had trial counsel pointed out the discrepancy between the two descriptions, "the result of the proceeding would have been different." *Moore*, 394 F.3d at 931.

The serial number discrepancy requires a little more discussion. As Gwyn correctly points out, initial police documents recorded no serial number on the gun recovered at the scene. The Crime Scene Search Unit report noted that the weapon had "no visible serial #." The MPD's "Incident-Based Event Report" stated affirmatively that "[t]here was no serial number on the weapon," and the MPD property record failed to note a serial number, even though the form had a place for one. Yet a document prepared by the MPD Firearms Identification

Section describing the weapon as inoperable noted the gun bore serial number 16690.

Confronted with this evidence, the district court concluded that "the fact that there is a lack of a serial number in the paperwork at one time, that appears another time, [is an] inconsistenc[y] in the context of this kind of case that I don't believe would have made any difference at all." Tr. of June 9, 2005 Hr'g at 98. We agree, but for a slightly different reason. Because the gun was admitted into evidence, we examined it ourselves and observed that the serial number is not only tiny, but well hidden at the bottom of a narrow, relatively deep slot near the top of the frame. Given this, we think it unsurprising that the line officers who prepared the first reports failed to notice the serial number, while a specialist at the firearms lab, apparently knowing where to look, discovered the number and recorded it in his report. Beyond pointing to the paperwork discrepancy, moreover, Gwyn identifies no evidence suggesting the gun introduced at trial was not the gun taken from him at the scene. We thus see no "reasonable probability" of a different outcome had trial counsel brought the inconsistent paperwork to the jury's attention. *Moore*, 394 F.3d at 931.

Next, Gwyn argues that trial counsel presented a "legally untenable" argument to the jury. Specifically, in his closing argument, counsel claimed that because the gun allegedly taken from Gwyn proved to be inoperable, the weapon was not a "firearm" for purposes of the felon-in-possession statute. Gwyn now argues that inoperability has no bearing on whether an item is a "firearm" within the meaning of the relevant statute, which defines the term as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon . . . ." 18 U.S.C. § 921(a)(3). According to Gwyn, the gun introduced into evidence

"obviously met that definition since it was designed to expel a projectile and was, at the very least, a 'frame' of a gun." Appellant's Br. 30. Gwyn cites an Eighth Circuit case holding that "[s]ection 921(a)(3) does not require a firearm to be operable," *United States v. York*, 830 F.2d 885, 891 (8th Cir. 1987), pointing out that this circuit has cited the Eighth Circuit's interpretation approvingly, *see United States v. Burke*, 888 F.2d 862, 869 (D.C. Cir. 1989). Unsurprisingly, the government neither contests Gwyn's interpretation of the statute nor argues that trial counsel's defense was consequently untenable. We too agree that 18 U.S.C. § 921(a)(3) includes "inoperable weapons" within the definition of "firearm."

Counsel's flawed legal argument could constitute grounds for ineffective assistance only if it prejudiced Gwyn. *Moore*, 394 F.3d at 931. Given the overwhelming evidence against Gwyn, we perceive no probability—much less a "reasonable probability"—that "the result of the proceeding would have been different" if trial counsel had omitted the inoperability defense. *Id.*

Finally, Gwyn contends that "[c]ounsel's lapses started in the very beginning when he failed to conduct any investigation at all." Appellant's Br. 26. In this circuit, however, a defendant may not merely allege that counsel failed to undertake an investigation, but must "show to the extent possible precisely what information would have been discovered through further investigation." *Askew*, 88 F.3d at 1073. Because Gwyn has failed to identify any evidence or theory of defense helpful to his cause (again, aside from the gun-related theories we have rejected), he has failed to meet this burden.

**III.**

In addition to his ineffective assistance of counsel argument, Gwyn, citing *United States v. Booker*, 543 U.S. 220 (2005), argues that the district court erred by treating the Sentencing Guidelines as mandatory. He seeks remand of the record pursuant to *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), "so that [the district court] may determine whether it would have imposed a different sentence materially more favorable to the defendant had it been fully aware of the post-*Booker* sentencing regime." *Id.* at 770. The government concedes that a *Coles* remand is appropriate.

Accordingly, we affirm Gwyn's conviction and remand the record to the district court pursuant to *Coles*.

*So ordered.*